EL PUEBLO DE PUERTO RICO, apelado, *v.* CRISTINO MORENO GONZÁLEZ, acusado y apelante.

*Número:* CR-83-32     *Resuelto:* 25 de abril de 1984

*Pedro García Mejías,* de *Ferrari & García,* abogado del apelante; *Miguel Pagán, Subprocurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Convicto que fuera en proceso celebrado por tribunal de derecho, el aquí apelante, Cristino Moreno González, fue sentenciado a cumplir la pena de siete años y medio de presidio por el honorable Tribunal Superior de Puerto Rico,

Sala de Aguadilla, ello en relación con un pliego acusatorio que por el delito de Tentativa de Violación Técnica radicara en su contra el ministerio fiscal.

En apelación señala la supuesta comisión por el tribunal de instancia de seis (6) errores.[1] El fundamento para concluir que en efecto se cometió el quinto error imputado —el relativo a la ausencia de intérprete durante el proceso— surge de una lectura de las *primeras dos páginas* de la exposición narrativa de la prueba certificada como correcta por el tribunal de instancia. Ello hace mandatoria la revocación de la convicción decretada en el presente caso y la devolución del mismo al tribunal de instancia para la celebración de un nuevo proceso. Veamos:

■ La Constitución del Estado Libre Asociado de Puerto Rico y la de los Estados Unidos de América garantizan que ninguna persona será privada de su libertad sin el debido procedimiento de ley,[2] y que toda persona acusada de un delito público tendrá el derecho a "carearse" con los

---

[1] "1. El fallo y la sentencia dictada son contrarios a la prueba y al derecho aplicable.

"2. El fallo y la sentencia dictada son el resultado del manifiesto error de la apreciación de la prueba.

"3. Que en vista de los hechos que encontró probados el Hon. Tribunal Sentenciador, venía obligado como cuestión de derecho, a absolver al acusado.

"4. Que la prueba que tuvo ante sí el Honorable Tribunal Sentenciador, no es suficiente en derecho para establecer la culpabilidad del acusado más allá de duda razonable por delito alguno.

"5. Que el Honorable Tribunal Sentenciador, incurrió en error al no permitir que el acusado tuviera un intérprete por razones de sordomudez, durante el procedimiento del juicio, a pesar de haber utilizado dichos mecanismos al comienzo del proceso como lo fue la renuncia al jurado, afectándose de esta forma su derecho constitucional al debido proceso de ley y el derecho a un juicio justo e imparcial.

"6. Que el Honorable Tribunal Sentenciador incurrió en error al no aplicar lo establecido en la Regla 131 de las de Procedimiento Criminal, al no celebrar una vista previa a ordenar la exclusión del público como lo requiere dicha Regla 131, afectándosele por esta actuación al acusado-apelante su derecho constitucional al debido procedimiento de ley y su derecho constitucional a un juicio público."

[2] Art. II, Sec. 7, de la Constitución del Estado Libre Asociado de Puerto Rico y la Enmienda V de la Constitución de los Estados Unidos de América.

testigos en su contra y a estar asistido de abogado durante el proceso criminal que se celebre. [3]

Los hechos específicos que sirven de base al presente recurso de apelación hacen necesario que, en primer término, consideremos si constituye una violación al principio del debido procedimiento de ley el que una persona que tiene graves problemas auditivos —al extremo de tener serias dificultades para oír y poder comunicarse— sea sometido a un proceso criminal donde está en juego su libertad sin tener el beneficio de un intérprete. Resolvemos en la afirmativa.

La profesora Dora Nevares, en su *Sumario de Derecho procesal penal puertorriqueño*, [4] define lo que a su entender comprende el concepto de debido proceso de ley en el campo criminal. Expresa que en "general, se trata de que el Estado aplique las normas penales a los invididuos con rigurosa justicia y precisión, de manera que se minimicen los riesgos de penalizar a un inocente, se proteja a las personas del poder abusivo por parte del Estado y se genere una atmósfera de justicia imparcial. De ahí que se requiera una compleja red de requisitos procesales —que emanan de disposiciones constitucionales, estatutarias y jurisprudenciales— y que ordenan el proceso de investigación, adjudicación y ejecución de un caso penal". [5]

L. J. Goldberg, en su artículo *The Law: From Shield to Sword for Deaf People*, 9 Hum. Rts. 22 (1980), nos señala que el deterioro de la audición es la incapacidad crónica más frecuente en los Estados Unidos. En cuanto a cómo se ven afectadas las personas con defectos en la audición en el sistema legal en los Estados Unidos, nos señala dicho autor que el ". . . sistema legal ha probado ser una barrera enorme

---

[3] Art. II, Sec. 11, de nuestra Constitución y Enmienda Sexta de la Constitución Federal.

[4] D. Nevares-Muñiz, *Sumario de Derecho procesal penal puertorriqueño*, Santurce, Art Printing, Inc., 1980.

[5] Íd., pág. 165.

para las personas con problemas auditivos. El sistema judicial, sus administradores y los abogados deben adquirir sensibilidad hacia las necesidades de comunicación de las personas sordas con el propósito de hacerles accesible el sistema legal". (Traducción nuestra.)[6]

Comentando sobre el "debido proceso de ley" que la Constitución de los Estados Unidos le garantiza a un acusado que no es capaz de entender el idioma que rige los procedimientos bajo los cuales se le juzga —situación similar al acusado con serios problemas de audición— se ha dicho:[7]

Though the concept of due process embodied in the Constitution is elusive, there is some agreement as to what constitutes its denial in criminal *causes*: "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."

*There can be little doubt that, unless mitigated somewhat by the appointment of an interpreter, the non-English-speaking accused's linguistic handicap prevents him from receiving a fair trial.* The lack of an interpreter would impose an insuperable obstacle to obtaining a fair trial, a predicament inimical to our universal sense of justice and fair play. (Énfasis suplido.)[8]

---

[6] El referido autor nos señala, con el propósito de resolver ". . . estas inquietudes, y dar a los sordos igual acceso al sistema judicial, es necesario aprobar una ley que incluya las siguientes disposiciones: que haya intérpretes competentes, a ser escogidos de un directorio en poder del tribunal; que el tribunal designe un intérprete automáticamente, cuando esté envuelta una persona sorda. Esto no tendría que ser solicitado por el sordo, quien puede que desconozca que tiene este derecho, y no se dejaría a la discreción del juez; que el tribunal pague al intérprete adecuadamente; que, en casos criminales, los intérpretes sean designados desde el momento del arresto; que se provean intérpretes en casos civiles y administrativos, al igual que en los criminales, tanto para los testigos como para las partes; que el privilegio de abogado-cliente se extienda al intérprete, de modo que a éste no se le exija prestar testimonio en relación con las declaraciones de un acusado sordo . . .". (Traducción nuestra.)

[7] Nota, *The Right to an Interpreter*, 25 Rutgers L. Rev. 145, 151–152 (1970).

[8] A esos mismos efectos, véase *State* v. *Faafiti*, 513 P.2d 697 (1973), donde se expresó:

En el presente caso, al ser llamado el mismo para juicio, ocurrió, según surge de las primeras dos páginas de la exposición narrativa de la prueba, lo siguiente:

*Exposición narrativa*

LLAMADO el caso de epígrafe para la celebración de la Vista en su fondo compareció el acusado, Cristino Moreno González, representado por el Lcdo. Carlos Roberto Soto y el Ministerio Público por el Honorable Fiscal Carlos R. Pagán.

Una vez informado al Tribunal que las partes se encontraban listas para entrar a la vista del caso en sus méritos, se comenzó con el proceso.

El Tribunal solicitó se le informara si el acusado interesaba ver su caso por Tribunal de Derecho o por Jurado. *Se informó además al Tribunal que el acusado era sordomudo* y que se traía a la señora madre de éste para que actuara como intérprete en caso del Tribunal así entenderlo necesario. El Tribunal solicitó a la señora madre del acusado a que pasara al frente con su hijo *por entender que el acusado tenía dificultades auditivas y del habla y ordenó se le tomaro juramento como intérprete* (a Doña Juanita Moreno).

Se le pidió a la señora madre del acusado le explicara lo relativo a la decisión de ver el juicio por jurado o por Tribunal de Derecho, y luego de que el Tribunal entendió que la renuncia al jurado era libre, voluntaria e inteligente, aceptó la misma y ordenó se continuaran los procedimientos por Tribunal de Derecho.

Aceptada la renuncia al jurado se procedió a ordenar la lectura de la acusación, informando la representación legal del acusado que se daba por leída la misma, *ordenando el Tribunal que debido a las limitaciones físicas del acusado en poder hablar y escuchar* que se leyera en alta voz la acusación y que el acusado la fuera leyendo a la misma vez que el Secretario desde la silla de aquel, o sea, del acusado.

Una vez leída la acusación, el Ministerio Público solicitó que se desalojara todo el público de la Sala, una vez que se trataba de un delito sexual donde la supuesta perjudicada era una menor. El Tribunal inquirió al Ministerio Fiscal de que no

"It is general law that where a defendant cannot understand and speak English, the judge is required to appoint an interpreter to aid a defendant. Otherwise, a trial held in his presence would be meaningless to him and would violate our concept of due process, as he would not be given his day in court."

había solicitado por escrito el desalojo del público y a esos efectos recesó por cinco minutos para discutir tal planteamiento en cámara. Luego de reunidos en cámara, el Tribunal ordenó el desalojo del público de la Sala a pesar de no haberse celebrado la vista correspondiente. El Ministerio Público informó que su teoría surgiría de la prueba. *Se pusieron todos los testigos bajo las reglas del Tribunal, incluyendo a la mamá del acusado, la intérprete,* se comenzó en el desfile de la prueba del Ministerio Público. Compareció como primer testigo la señora Irma Fussá de Mercado. (Énfasis suplido.)

No hay duda del hecho de que los problemas de audición que confronta el apelante ameritaban que estuviera asistido de un intérprete durante la celebración de *todo* el proceso. Como hemos visto, el propio tribunal de instancia hizo una determinación a los efectos de que las "dificultades auditivas y del habla" que padecía el acusado hacía necesario el uso de un intérprete.

█ El derecho de un acusado a "carearse" o a confrontarse con los testigos en su contra y el derecho a tener una efectiva y eficiente asistencia de abogado durante la celebración del proceso criminal a que es sometido, están íntimamente relacionados entre sí y, hasta cierto punto, el uno depende del otro.

█ Está plenamente reconocido que el derecho a confrontarse con los testigos de cargo realmente significa el derecho del acusado a oír a los testigos que declaran en su contra[9] e incluye el derecho a poder contrainterrogarlos a través de su abogado. 5 *Wigmore, Evidence* Sec. 1395, (Chadbourn rev. 1974); Nota, *The Right to an Interpreter,* 25 Rutgers L. Rev. 145, 149-150 (1970); W. B. C. Chang y M. U.

---

[9] Naturalmente que el derecho *a oír* a los testigos que declaran en su contra *no significa* que el acusado tiene un derecho absoluto *a estar presente* durante el proceso. Dicho derecho puede entenderse renunciado por la "conducta" del acusado. Ejemplo de ello lo es la incomparecencia voluntaria injustificada a pesar de haber sido citado, *Pueblo* v. *Bussman,* 108 D.P.R. 444 (1979); *Pueblo* v. *Pedroza Muriel,* 98 D.P.R. 34 (1969); y la conducta impropia o desordenada observada que requiere su remoción del tribunal. Regla 243(d)(3) de las de Procedimiento Criminal.

Araujo, *Interpreters for the Defense: Due Process for the Non-English-Speaking Defendant,* 63 Cal. L. Rev. 801, 813 (1975).

Un acusado que no entiende el lenguaje en que declaran los testigos de cargo o que no posee la facultad auditiva de escucharlos no está en posición de identificar un testimonio incorrecto o falso por parte de dichos testigos. En su consecuencia está imposibilitado de así informárselo a su abogado, afectándose de esa forma enormemente la calidad y eficacia del contrainterrogatorio de los testigos de cargo por parte del abogado defensor, lo que resulta en definitiva en una denegatoria del derecho constitucional a "carearse" con los testigos en su contra.

Como expresara la Corte Suprema del Estado de Alabama en *Terry* v. *State,* 105 So. 386, 387–388 (1925):

The constitutional right, supra, would be meaningless and a vain and useless provision unless the testimony of the witnesses against him could be understood by the accused. *Mere confrontation of the witnesses would be useless, bordering upon the farcical, if the accused could not hear or understand their testimony.* So, also, as to the nature and cause of the accusation. In the absence of an interpreter it would be a physical impossibility for the accused, a deaf-mute, to know or to understand the nature and cause of the accusation against him, and, as here, he could only stand by helplessly, take his medicine, or whatever may be coming to him, without knowing or understanding, and all this in the teeth of the mandatory constitutional rights which apply to an unfortunate afflicted deaf-mute, just as it does to every person accused of a violation of the criminal law. (Énfasis suplido.)

La ausencia de un contrainterrogatorio efectivo causa, a su vez, una falta de asistencia legal adecuada, derecho garantizado por el debido proceso de ley. *Pueblo* v. *Gordon,* 113 D.P.R. 106, 108 (1982); *Ex Parte Hernández Laureano,* 54 D.P.R. 416 (1939); *Cuyler* v. *Sullivan,* 446 U.S. 335, 343 (1980); *Powell* v. *Alabama,* 287 U.S. 45, 71 (1932). En *Pueblo* v. *Gordon,* ante —citando a *Chapman* v. *California,* 386 U.S. 18, 23 (1967)— expresamos que: "Tan fundamental se considera el derecho de un acusado a estar bien

asistido de abogado, que la violación de ese derecho a falta de renuncia, sin más, conlleva la revocación de la sentencia condenatoria."

▮ La falla en que incurre un tribunal de justicia al no proveerle un intérprete a un acusado que tiene una *necesidad real* de ello acrecenta las posibilidades de que se penalice a un inocente, en lugar de minimizarlas. El impedimento físico que sufre el apelante —*reconocido expresamente por el tribunal de instancia*— impedía la comunicación efectiva durante el proceso entre éste y su representación legal.

En el presente caso el apelante no tuvo, o no pudo tener, una adecuada asistencia de abogado. Ello es así porque no importa lo competente que sea un abogado, la imposibilidad de comunicarse con su cliente lo incapacita a todos los fines prácticos para actuar como tal; en otras palabras, la ausencia del intérprete bajo estas circunstancias impide que el acusado tenga un juicio justo e imparcial. *Lisenba* v. *California*, 314 U.S. 219 (1941).

Por los fundamentos antes expresados, *se revoca la sentencia dictada en el presente caso y se devuelve el mismo al tribunal de instancia para la celebración de un nuevo juicio.*

El Juez Asociado Señor Díaz Cruz emitió voto disidente.

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz.

La opinión propone la revocación de sentencia por tentativa de violación técnica en la persona de una niña de 11 ó 12 años, y la celebración de nuevo juicio. Se ofrece como único fundamento para así decidir, que el acusado, siendo sordomudo, fue privado de un intérprete, lo que afectó la validez del juicio. Un examen de la exposición narrativa de la prueba revela que la señora madre del acusado le acompañó al juicio y fue su intérprete en el acto de renuncia al jurado. Al juramentarse los testigos, la defensa anunció a dicha señora

como uno de sus testigos, sin objeción a que se le pusiera bajo las reglas del tribunal y sin solicitud para que se proveyera otro intérprete. No planteó la necesidad del mismo a lo largo del juicio y aquí trae el punto con reserva pues dice que "el debido proceso de ley le fue en *cierta forma* privado . . .". El más convincente dato sobre la innecesidad de intérprete lo configura la aquiescencia del defensor, su patente renuncia al mismo. Súmese a esto que el impedimento del acusado fue contradicho por testigos que dijeron que se comunicaba sin dificultad con ellos, inclusive la estudiante perjudicada. E.N.P., págs. 5 y 7. De ello resulta que la aptitud del apelante para comunicarse libremente, fue hecho determinado por el juzgador al adjudicar credibilidad. La indebida intervención de la mayoría con ese criterio, y la resurrección de un derecho renunciado someterán a esta joven estudiante a un ulterior repaso del triste episodio.

Debió confirmarse la sentencia.