Voto particular disidente emitido por el
Juez Asociado Señor Estrella Martínez.
Disiento porque resulta imperativo expresarnos, por primera vez, en torno a si el Estado posee un poder irrestricto que le permita extender injustificada e irrazonablemente la fase de ejecución de una sentencia penal o si, por el contrario, existen garantías que resguardan a los ciudadanos y le permiten cuestionar ese grado de dilación ante el foro judicial.
A la luz de las garantías reconocidas en este disenso, opino que erraron los foros recurridos al denegar un remedio sin la celebración de una vista al respecto. En consecuencia, hubiese revocado y devuelto el caso en un término perentorio al foro primario para la celebración de una vista en la cual se aplicaran los criterios aquí expuestos.
I
Por unos hechos ocurridos el 15 de agosto de 1996, el Ministerio Público presentó dos denuncias contra el Sr. Aneudy Crespo Cumba (señor Crespo Cumba o peticionario) en las que le imputó la comisión de los delitos menos graves de agresión agravada, 33 LPRA ant. see. 4032, y de amenaza, 33 LPRA ant. see. 4194, tipificados en el Código Penal entonces vigente. Celebrados los procedimientos de rigor, el señor Crespo Cumba fue hallado culpable de los delitos imputados. Así las cosas, el 2 de septiembre de 1997, el Tribunal de Primera Instancia emitió una Sentencia por medio *901 de la cual le impuso al peticionario una pena de reclusión de 6 meses consecutivos por cada delito, para un total de 1 año. Tras varios trámites procesales, el foro primario concluyó que no existía impedimento legal por el cual no debía con-ceder el beneficio de sentencia suspendida al señor Crespo Cumba. Por tal razón, su Sentencia fue suspendida bajo el régimen de libertad a prueba.
Empero, mientras se encontraba disfrutando del beneficio de libertad a prueba, el señor Crespo Cumba incumplió con las condiciones al arrojar positivo en una prueba de sustancias controladas. Ante ello, el Ministerio Público solicitó la revocación de la sentencia suspendida. Ponderada la petición del Ministerio Público, el Tribunal de Primera Instancia inició el proceso de revocación. Luego de varios señalamientos en torno al particular, se celebró la vista final de revocación, a la cual el señor Crespo Cumba no compareció. No obstante, su representante legal estuvo presente.
Celebrada la referida vista, el 14 de enero de 1999 el tribunal de instancia dictó una Sentencia en la cual revocó la libertad a prueba del señor Crespo Cumba y ordenó su detención y arresto inmediato hasta que cumpliese la pena de 1 año de reclusión que se le había impuesto. Transcurrió el tiempo y, tras 16 años de emitida la orden de arresto, ésta se diligenció el lú de junio de 2015.(1)
Insatisfecho con dicha actuación, el 18 de junio de 2015, el peticionario instó ante el foro primario una Moción urgente al amparo de la Regla 192.1 de las de Procedimiento Criminal. En esencia, argüyó que no existía justificación para que el expediente de su caso se archivara y no se realizara el arresto diligentemente para cumplir con la sentencia impuesta. Argumentó que, en consideración al extenso tiempo transcurrido desde que se emitió la Sentencia y a que siempre ha estado accesible dentro de la jurisdicción, se debía dar por cumplida la pena impuesta o, en la alterna *902 tiva, ordenarle el pago de multas o la realización de servicios comunitarios. Ante ello, el Ministerio Público presentó un escueto escrito intitulado Contestación moción al amparo de la Regla 192.1. En éste se limitó a expresar que no procedía la petición del señor Crespo Cumba, porque vivimos en un País de ley y orden, donde cada quien tiene que cumplir con las penas legalmente impuestas por los tribunales. El peticionario presentó una réplica al escrito del Ministerio Público, pero fue declarada “no ha lugar”. En disconformidad, instó una Moción de reconsideración y otros extremos, en la cual reiteró los argumentos esgrimidos y la solicitud de remedios. Evaluada esta moción, el 6 de agosto de 2015 el Tribunal de Primera Instancia la declaró “no ha lugar”.
Inconforme, el señor Crespo Cumba recurrió ante el Tribunal de Apelaciones mediante una petición de certiorari. Presentó, además, una Moción en auxilio de jurisdicción en la cual solicitó su excarcelación mientras se dilucidaba su recurso. En lo pertinente, el peticionario sostuvo que procedía determinar ilegal y violatoria del Art. II, Sec. 12 de la Constitución de Puerto Rico, LPRA, Tomo 1, la ejecución de una sentencia penal emitida hace 16 años. Alegó que medió incuria por parte del Estado al diligenciar una orden de arresto tras 16 años de dictada. De igual forma, argumentó que por el tiempo transcurrido —y por tratarse de delitos menos graves— procedía dar por cumplida la pena impuesta o, en la alternativa, modificar la pena de reclusión por el pago de multas o por la realización de servicios comunitarios. Finalmente, reclamó que procedía la celebración de una vista para dilucidar los méritos de su solicitud al amparo de la Regla 192.1 de Procedimiento Criminal, infra.
Aquilatados los argumentos del peticionario, el 31 de agosto de 2015 el foro apelativo intermedio emitió una Resolución en la cual denegó la expedición del recurso y, por lo tanto, declaró “no ha lugar” la Moción en auxilio de *903 jurisdicción. En esencia, determinó que el dictamen del foro primario se realizó conforme a derecho. A su vez, razonó que la petición presentada por el señor Crespo Cumba no cumplió con ninguno de los requisitos dispuestos en la Regla 192.1 de Procedimiento Criminal, infra. En ese sentido, concluyó que la solicitud del peticionario constituía un reclamo abstracto, huérfano de argumentos, por medio del cual se pretendía dejar sin efecto una sentencia válidamente dictada en 1999. Por último, sostuvo que el remedio solicitado por el peticionario no tenía cabida al amparo de la referida Regla 192.1.
En desacuerdo con ese proceder, el señor Crespo Cumba acude ante este Tribunal mediante un recurso de certiorari, junto con una Moción en auxilio de jurisdicción. Esencialmente, reproduce los argumentos esgrimidos ante los foros recurridos. Esto es, aunque el peticionario no cuestiona la legalidad de la Sentencia dictada el 14 de enero de 1999, señala que su ejecución —luego de 16 años de emitida— no es proporcional a la gravedad del hecho, así como tampoco propicia su rehabilitación social y moral, en contravención al mandato constitucional. Reitera que, por tratarse de una situación excepcional, en la cual ha mediado incuria y desidia por parte del Estado, se debe dar por cumplida la pena de reclusión impuesta o, en cambio, modificarla al pago de multas o a la realización de servicios comunitarios.
De igual forma, el señor Crespo Cumba sostiene que la demora excesiva, injustificada e irrazonable del Estado en ejecutar la Sentencia dictada en 1999 le ha causado un perjuicio patente y extraordinario en detrimento de su rehabilitación y derechos. También arguye que el Estado no fue diligente, ya que se cruzó de brazos durante 16 años, colocándolo en un estado de desventaja. Del mismo modo, alega que el Estado tuvo amplia oportunidad para ejecutar la Sentencia emitida el 14 de enero de 1999, por lo que no debió esperar 16 años para ello.
*904 El peticionario expresa, además, que durante los pasados 16 años ha estado accesible y dentro de la jurisdicción, sin que el Estado haya realizado gestiones afirmativas para efectuar su arresto. Para ello, presenta evidencia de que ha comparecido en innumerables ocasiones ante el Tribunal de Primera Instancia para vistas relacionadas con otros casos y que, incluso, ha colaborado con la Policía en la prevención del crimen en su comunidad. Finalmente, argumenta que no existe motivo que justifique la inacción y dilación injustificada del Estado en diligenciar una orden de arresto emitida hace 16 años, por lo que le debe asistir algún remedio. En vista de ello, nos solicita que revoquemos la determinación del Tribunal de Apelaciones, ordenemos su excarcelación y procedamos conforme a derecho.
Evaluada la petición de certiorari, el 15 de septiembre de 2015 la Sala de Verano III de este Tribunal emitió una Resolución mediante la cual se le ordenó a la Oficina de la Procuradora General que compareciera y expusiera, en un término final e improrrogable de 10 días, su posición con relación al recurso instado por el peticionario. Se le advirtió que de no comparecer, este Tribunal procedería conforme a derecho.
En su Escrito en cumplimiento de orden, la Oficina de la Procuradora General expone que procede la desestimación del recurso instado por el peticionario debido a la ausencia de determinados documentos. Además, alega que el señor Crespo Cumba no tiene remedio alguno al amparo de la Regla 192.1 de Procedimiento Criminal, infra, y que los remedios existentes establecidos en la Regla 51 de Procedimiento Criminal, infra, no aplican al presente caso.
Ante la necesidad de una adecuada y oportuna disposición de la controversia y de pautar una norma clara, hubiese expedido el auto solicitado.
*905 II
En innumerables ocasiones, este Tribunal se ha concentrado en atender la problemática de las dilaciones del Estado en dos etapas del procedimiento penal, a saber: (1) la presentación de cargos criminales y (2) el desenvolvimiento del juicio, es decir, desde su inicio hasta que se dicta sentencia. En cuanto a la primera etapa, este Tribunal se ha amparado en la garantía constitucional que dis-pone expresamente que no se privará a ciudadano alguno de su libertad o de su propiedad sin el debido proceso de ley, para determinar que la dilación injustificada del Estado en presentar el caso ante el foro judicial puede constituir una violación a esta garantía constitucional. Véanse: Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 296; Emda. XTV, Const. EE. UU., LPRA, Tomo 1, ed. 2008, pág. 206. Véanse, además: Pueblo v. Esquilín Maldonado, 152 DPR 257, 263 (2000) (per curiam); Pueblo v. Santiago, 139 DPR 869, 875 (1996). De esta forma, se ha expresado que para analizar si se infringió el debido proceso de ley en estas circunstancias, procede determinar si la dilación del Estado en presentar los cargos provocó un estado de indefensión a la persona y si esa dilación no está razonablemente justificada, más allá de la liberalidad con que se debe analizar el proceso investigativo. Pueblo v. Esquilín Maldonado, supra, pág. 263. Véase, además, O.E. Resumil, Derecho procesal penal: limitaciones constitucionales al ejercicio del “ius puniendi”, 71 (Núm. 2) Rev. Jur. UPR 547 (2002). El grado de prueba requerido en estos casos es el de preponderancia de evidencia. Pueblo v. Esquilín Maldonado, supra, pág. 264; Pueblo v. Soto Zaragoza, 94 DPR 350, 353 (1967).
Por su parte, este Tribunal ha resuelto que lo concerniente a las dilaciones en el desenvolvimiento del caso también está cobijado por la Constitución de Puerto Rico, la cual garantiza el derecho de todo acusado a un juicio rápido. Art. *906 II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 343. Como regla general, este derecho cobra vigencia desde que el imputado de delito es detenido o está sujeto a responder (held to answer). Pueblo v. Custodio Colón, 192 DPR 567 (2015); Pueblo v. García Vega, 186 DPR 592, 607 (2012); Pueblo v. Rivera Santiago, 176 DPR 559, 569 (2009); Pueblo v. Rivera Tirado, 117 DPR 419, 431 (1986). En ese sentido, la protección constitucional a un juicio rápido se activa al poner en movimiento el mecanismo procesal que puede concluir con una condena. Pueblo v. Custodio Colón, supra.
Este Tribunal ha aclarado en repetidas ocasiones que el derecho a juicio rápido no se limita al acto del juicio propiamente dicho, sino que abarca todas las etapas del proceso desde la imputación inicial del delito.(2) Pueblo v. García Vega, supra, pág. 606; Pueblo v. Opio Opio, 104 DPR 165, 169 (1975). De esta forma, el referido derecho aplica a distintas etapas del proceso penal desde el arresto del imputado, el traslado ante un foro judicial, la celebración de la vista preliminar, la lectura de acusación y la celebración del juicio. Véase L. Rivera Román, Los derechos de los acusados en los procedimientos penales bajo la Constitución de Puerto Rico y los Estados Unidos, XLVI (Núm. 2) Rev. Jur. UIPR 417 (2011-2012). Incluso, esta protección constitucional garantiza que se sentencie a la persona dentro de un término razonable.(3) Pueblo v. Kuilan Santos, 113 DPR 831, 833 *907 (1983) (per curiam)-, Pueblo v. Aponte Vázquez, 105 DPR 901, 904 (1977) (per curiam). Véase, además, E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. UPR 83 (1996).
Al evaluar la razonabilidad de la dilación de los términos de juicio rápido, los foros judiciales deben realizar un balance de intereses a la luz de cuatro factores, a saber: (1) la duración de la tardanza; (2) las razones para la dilación; (3) la invocación oportuna del derecho, y (4) el peijuicio resultante de la tardanza. Véanse: Pueblo v. Custodio Colón, supra, pág. 610; Pueblo v. García Vega, supra, pág. 610; Pueblo v. García Colón I, 182 DPR 129, 143 (2011); Pueblo v. Carrión, 159 DPR 633, 641 (2003). Véase, además, E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1992, T. II, págs. 151-154.
A. De lo anterior se colige claramente que la jurisprudencia se ha encargado de atender principalmente el problema de las dilaciones excesivas, injustificadas e irrazonables del Estado en presentar cargos criminales —atendido por el derecho al debido proceso de ley— y el problema de las demoras indebidas durante las etapas del juicio —atendido particularmente por el derecho a un juicio rápido—. Ello significa que no hemos abordado el asunto de las dilaciones excesivas, injustificadas e irrazonables del Estado en la fase de ejecución de las sentencias penales. Un examen de la normativa aplicable a la esfera penal revela que no existe un precepto jurisprudencial o legislativo que expresamente fije el término prudencial que debe existir entre la emisión de una sentencia penal y su ejecución. En ese sentido, tam *908 poco hemos resuelto si el Estado tiene un poder irrestricto que le permite ejecutar una sentencia penal en un tiempo indeterminado o si, en cambio, existen protecciones que le asisten a los ciudadanos contra la dilación excesiva, injustificada e irrazonable en la ejecución de las sentencias penales.
La Regla 175 de Procedimiento Criminal, 34 LPRAAp. II, se limita a disponer que, una vez se dicte sentencia, “se entregará inmediatamente al funcionario que deba ejecutarla una copia certificada de la misma, la cual será suficiente para su ejecución, sin que fuere necesaria ninguna otra orden o autorización para justificar o pedir tal ejecución”. Por su parte, lo único que hemos encontrado en las normas penales con relación a cuándo debe comenzar la ejecución de la pena impuesta es lo establecido en el Art. 70 del Código Penal vigente, 33 LPRA see. 5103, el cual abarca, más bien, el modo de diferir la ejecución de la pena en tres instancias, a saber: (1) cuando el convicto se encuentre gravemente enfermo, certificada su condición por prueba médica;(4) (2) cuando se trate de una mujer en estado de emba razo o no hayan transcurrido 6 meses desde el alumbramiento, o (3) cuando otras circunstancias lo justifiquen por un plazo no mayor de 10 días. 33 LPRA sec. 5103.
Ahora bien, lo enmarcado tanto en la precitada Regla 175 como en el Art. 70 del Código Penal, supra, aunque arroja cierta luz, no despeja ni aclara todas las interrogantes que presenta la controversia que tenemos ante nuestra consideración. Las normas referidas resultan insuficientes para atender aspectos medulares de la fase de ejecución de sentencias penales, específicamente, en cuanto a determinar si el Estado tiene un poder ilimitado de tiempo para ejecutar sentencias penales.
El vacío jurídico que existe en nuestro ordenamiento pe *909 nal en cuanto a estos asuntos exigía reconocer el remedio judicial solicitado y pautar, tal como lo hemos hecho en otras etapas, unos criterios que permitan evaluar la razonabilidad que debe existir entre el tiempo en que se dicta una sentencia penal y su ejecución. Ello permitirá sopesar las razones que tuvo el Estado para la dilación en ejecutar una sentencia penal y las salvaguardas que le asisten a los ciudadanos en esa etapa del proceso penal. Sin duda, la pronta solución de esta laguna jurídica no solo es de interés exclusivo del peticionario, sino del Estado, la comunidad jurídica y la sociedad en general. Veamos.
III
En su acepción jurídica, la etapa de ejecución se concibe como el conjunto de actos protagonizados por los organismos del Estado, encaminados a materializar y hacer cumplir los pronunciamientos adoptados en una sentencia. F.D. Olivares Grullón y otros, Constitucionalización del proceso penal, República Dominicana, Ed. Corripio, 2002, pág. 407. En otras palabras, la ejecución es el trámite procesal que consiste en el cumplimiento de lo ordenado en una sentencia. Gran diccionario jurídico de Vecchi, Barcelona, Ed. Vecchi, 1991, pág. 150. Consecuentemente, en el ámbito penal la ejecución se refiere a la actividad procesal desplegada por el Estado dirigida a hacer cumplir los pronunciamientos contenidos en una sentencia penal. Olivares Grullón y otros, op. cit. En esencia, es el momento procesal en que, recaída una sentencia penal, se procede a hacer efectivo lo ordenado por ésta.
Cabe señalar que en otras jurisdicciones existe un debate filosófico entre varias corrientes o teorías en cuanto a la naturaleza de la ejecución penal, particularmente lo concerniente a la ejecución de las penas privativas de libertad. De esta forma, existe un sector doctrinal que plantea que la naturaleza de la ejecución penal es puramente de índole *910 administrativa. Es decir, sostienen que una sentencia penal constituye el punto final del proceso penal y, por ende, el inicio de una actividad enteramente administrativa. Esto, claro está, sin perjuicio de la intervención judicial en incidentes puntuales. Olivares Grullón y otros, op. cit.
Para un segundo sector, la ejecución penal constituye una actividad procesal. Así, argumentan que el proceso penal no concluye cuando se dicta la sentencia, sino que continúa hasta la extinción de la pena. En ese sentido, la ejecución tiene una inequívoca naturaleza procesal. Olivares Grullón y otros, op. cit.
Por su parte, existe una tercera corriente que afirma la naturaleza mixta de la ejecución penal. Esto es, concibe la etapa de ejecución penal en dos fases diferenciables, a saber: ejecución y cumplimiento. Para este sector, la ejecución es tarea que le compete a los foros judiciales. En cambio, sostienen que el aspecto del cumplimiento de las penas privativas de libertad le corresponde al ente administrativo. Olivares Grullón y otros, op. cit., págs. 407-408.
Expuesto el esquema doctrinal, resalta el hecho de que en nuestro ordenamiento jurídico no hemos adoptado ninguna de las teorías sobre la naturaleza de la ejecución penal. En ese sentido, no existe un pronunciamiento jurisprudencial o legislativo que afirme cuál es la naturaleza de la ejecución penal en nuestra jurisdicción. Y es que nuestra realidad constitucional lo hace innecesario porque contiene unas garantías expresas aplicables en cualquiera de esas tres visiones de la ejecución en el proceso penal, lo que nos permite resolver la controversia ante nos. Veamos cuáles son esas salvaguardas constitucionales.
A. Conforme adelantáramos, la Constitución de Puerto Rico reconoce expresamente en su Carta de Derechos que “[n]inguna persona será privada de su libertad o propiedad sin [el] debido proceso de ley [...]”. Art. II, Sec. 7, Const. ELA, supra, pág. 296. Igual protección hallamos en la Carta Magna de Estados Unidos. Véase Emda. XIV, *911 Const. EE. UU. En esencia, para que se active esta cláusula constitucional en su vertiente procesal, tiene que existir un interés individual de libertad o propiedad. Una vez se identifica que la persona cumple con la exigencia de un interés libertario o propietario, y que ese interés está amenazado por una intervención del Estado, procede determinar cuál es el procedimiento que se exige.(5) Pueblo v. Villafañe Marcano, 183 DPR 50, 71 (2011); Pueblo v. Esquilín Maldonado, supra, pág. 262. Aunque la característica primordial es que el procedimiento debe ser justo, se han establecido componentes básicos del debido proceso, a saber: (1) notificación adecuada; (2) oportunidad de ser oído, y (3) derecho a defenderse. Pueblo v. Villafañe Marcano, supra, pág. 71; Pueblo v. Esquilín Maldonado, supra, pág. 262.
En consecuencia, la cobertura del derecho constitucional al debido proceso de ley es amplísima. D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, lOma ed., San Juan, Ed. Inst, para el Desarrollo del Derecho, 2014, pág. 258. Según explica el profesor Chiesa Aponte, esta cláusula es fundamental y en la zona procesal penal permite la más variada gama de planteamientos. Chiesa, Los derechos de los acusados..., supra. Esas garantías del debido proceso de ley permean todas las etapas del procedimiento penal, es decir, la etapa de investigación, procesamiento, sentencia y ejecución de ésta.
En cuanto al particular, en Pueblo v. Moreno González, 115 DPR 298, 301 (1984), este Tribunal tuvo ocasión para expresar lo que debe comprender el debido proceso de ley en el ámbito criminal. A esos efectos, se determinó que ese derecho constitucional le impone al Estado el deber de aplicar las normas penales a los ciudadanos con rigurosa jus *912 ticia y precisión, de manera que se minimicen los riesgos de penalizar a un inocente, se proteja a las personas del poder abusivo por parte del Estado y se genere una atmósfera de justicia imparcial. Id. Es por ello que, indiscutiblemente, se requiere una compleja red de requisitos procesales que ordenen el proceso de investigación, adjudicación y ejecución de un caso penal. Id. Véase, además, Nevares-Muñiz, op. cit., págs. 258-259. En esta última etapa no podemos relegar la realidad de que en nuestro ordenamiento jurídico la ejecución de la sentencia es de suma importancia, ya que ésta es el medio que se utiliza para proveer la oportunidad de reinserción y de rehabilitación moral y social a la persona que incurra en delito. Art. VI, Sec. 19, Const. ELA, Tomo 1, ed. 2008, pág. 440.
B. Cónsono con lo anterior, opino que una dilación ex-cesiva, injustificada e irrazonable por parte del Estado en la ejecución de una sentencia penal vulnera el debido proceso de ley en su vertiente procesal. El derecho a un proceso sin dilaciones excesivas, injustificadas e irrazonables es de aplicación y necesaria observancia en todo tipo de proceso o etapa. No puede ser de otro modo. Ello, pues los ciudadanos no pueden quedar desvalidos y sin protección ante la dilación excesiva, injustificada e irrazonable del Estado en ejecutar una sentencia penal. Sin duda, es evidente que el Estado tiene que ser diligente en la tramitación de la ejecución de una sentencia penal por imperativo del debido proceso de ley.
Claro está, existirán ocasiones en que la dilación se deba a causas no atribuibles al Estado o que la dilación sea justificada y razonable. Sin embargo, no reconocer expresamente y pautar la existencia de garantías fundamentales en la etapa de ejecución de sentencias penales provocaría un indeseable limbo jurídico para los ciudadanos que se encuentran en esa fase del proceso penal. Peor aún, podría resultar en un mecanismo silente del Estado para ejercer un poder abusivo contra las personas convictas de delito. *913 Lamentablemente, hoy se adopta un curso contrario a evitar las dilaciones excesivas, injustificadas e irrazonables en el trámite del proceso penal, incluida la etapa de ejecución de la sentencia.
Expuesto lo anterior, resultaba necesario pautar qué criterios deben aplicar ante un planteamiento de que el Estado infringió su garantía constitucional a un debido proceso de ley por la dilación excesiva, injustificada e irrazonable en la fase de ejecución de una sentencia penal.(6) En cuanto a ello, considero que estos casos conllevan un análisis de varios factores para que el foro judicial pueda dictaminar si la dilación del Estado en ejecutar la sentencia ha sido excesiva, injustificada o sobrepasa los parámetros de lo razonable, por lo que vulnera el derecho a un debido proceso de ley. Así pues, los siguientes criterios servirían de guía a los tribunales: (1) la duración de la dilación en la ejecución de la sentencia penal; (2) las razones para la dilación; (3) el perjuicio resultante de la dilación; (4) la conducta y accesibilidad del peticionario luego de dictada la sentencia penal; (5) los efectos en la rehabilitación *914 del peticionario;(7) (6) el proceder de las autoridades pertinentes luego de dictada la sentencia penal, y (7) la complejidad del caso.(8)
Los criterios mencionados permitirían que el foro judicial pueda crear un balance entre los intereses apremiantes del Estado y las garantías fundamentales que cobijan a los ciudadanos en la fase de ejecución de la sentencia penal. A manera de aclaración a la norma planteada, advertiría que la vulneración al debido proceso de ley conlleva el análisis de todos los criterios señalados. Ninguno de los factores debe ser decisivo, de suyo. Por ende, considero que la alegación de violación al debido proceso de ley en estos casos no puede adherirse a medidas de calendario o descansar en una regla inflexible basada en un simple cómputo matemático, sino que el enfoque es pragmático y responde a la naturaleza inherente que emana de la protección constitucional a un debido proceso de ley en su vertiente procesal.
Expuesto el marco jurídico aplicable y disipadas las cuestiones de umbral, procedo a aplicarlo a la controversia ante nos.
IV
Según indicado, surge de este caso que, por motivo de unos hechos ocurridos en el 1996, el señor Crespo Cumba *915 fue acusado por dos infracciones al Código Penal. Visto el caso, fue sentenciado el 8 de julio de 1997 a cumplir 6 meses de reclusión consecutivos por cada uno de los delitos, para un total de 1 año. Cumplidos los trámites de rigor, la sentencia del señor Crespo Cumba fue suspendida bajo el régimen de libertad a prueba. No obstante, éste incumplió con las condiciones, lo que motivó que el Ministerio Público solicitara la revocación de su probatoria. Así las cosas, y luego de varios incidentes procesales, el 14 de enero de 1999 el foro de instancia revocó la libertad a prueba del peticionario y ordenó su arresto inmediato y su detención hasta que cumpliese la pena de 1 año de reclusión. Luego de transcurridos 16 años de emitida la orden de arresto, ésta se diligenció el 16 de junio de 2015.
Por lo anterior, el señor Crespo Cumba presentó una moción al amparo de la Regla 192.1 de Procedimiento Criminal, supra. En esencia, argüyó que no podía justificarse la dilación del Estado en dar cumplimiento a la sentencia impuesta. Expresó que, debido al extenso tiempo transcurrido desde dictada la Sentencia y a que siempre ha estado accesible dentro de la jurisdicción, se debía dar por cumplida la pena impuesta o, en la alternativa, modificarla. Evaluada la moción presentada por el peticionario, el foro primario la declaró “no ha lugar”. Ello sin la celebración de una vista al respecto.
Inconforme, el señor Crespo Cumba recurrió al Tribunal de Apelaciones. En síntesis, argumentó que la ejecución de una sentencia emitida hace 16 años era ilegal y contraria a las garantías constitucionales. Argüyó que medió incuria por parte del Estado al ejecutar una sentencia luego de 16 años de emitida. Del mismo modo, sostuvo que por el tiempo transcurrido procedía dar por cumplida la pena impuesta o, en la alternativa, modificarla. A su vez, alegó que procedía la celebración de una vista evidenciaría para evaluar los méritos la moción presentada al amparo de la Regla 192.1 de Procedimiento Criminal, supra. Examinados *916 los argumentos del peticionario, el foro apelativo intermedio denegó la expedición del recurso.
En desacuerdo, el peticionario acudió ante este Tribunal. Ante nos, si bien no cuestiona la legalidad de la Sentencia dictada en 1999, argumenta que la dilación en su ejecución no propicia su rehabilitación social y moral. Arguye que por ser de una situación excepcional, en la que ha mediado incuria y desidia por parte del Estado, se debe dar por cumplida la pena de reclusión impuesta o, en cam-bio, modificarla. Del mismo modo, alega que el Estado ha tenido amplia oportunidad de ejecutar la sentencia emitida en 1999 —ya que ha estado accesible en la jurisdicción—, por lo que la demora innecesaria e irrazonable le ha causado un perjuicio patente y extraordinario, en detrimento de su rehabilitación y sus derechos. A su vez, plantea que no se justifica la inacción y dilación injustificada del Estado en ejecutar una sentencia dictada hace 16 años. Por lo tanto, nos solicita la revocación de la determinación del Tribunal de Apelaciones y su excarcelación.
Examinado el expediente del caso, concluyo que los foros recurridos incidieron al denegar, sin más, los reclamos incoados por el señor Crespo Cumba. Asimismo, considero que éstos actuaron de forma improcedente al dejar entrever que las alegaciones del peticionario no tenían cabida en nuestro ordenamiento jurídico. A lo sumo, ante los reclamos esgrimidos por el señor Crespo Cumba, los foros recurridos debieron ordenar la celebración de una vista. Así las cosas, no puedo imprimirle un sello de corrección al razonamiento de los foros recurridos.
V
En consecuencia, revocaría el dictamen emitido por el Tribunal de Apelaciones y devolvería el caso al foro primario para que, en un término perentorio, celebre una vista en la cual se diluciden los reclamos del señor Crespo *917 Cunaba a la luz de los criterios expuestos en este Voto Particular. Ello en aras de atender los méritos de los reclamos esgrimidos por éste y aquellos argumentos que a bien tenga a plantear el Estado. Una vez celebrada la correspondiente vista, el foro primario estaría en mejor posición de adjudicar si la dilación del Estado en ejecutar la sentencia penal del peticionario infringió las garantías constitucionales aquí discutidas.

 Ello significa que, el día cuando se emite este pronunciamiento, el Sr. Aneudy Crespo Cumba llevaba más de 100 días recluido en una institución penitenciaria.

 Adviértase que es pertinente distinguir la detención preventiva del derecho a un juicio rápido. Ello, pues la cláusula de detención preventiva busca evitar que la encarcelación del acusado antes del comienzo del juicio exceda de 6 meses. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 344. En cambio, el derecho ajuicio rápido tiene el propósito de que el inicio y las demás etapas del juicio no se afecten por dilaciones excesivas e irrazonables. La violación al término de detención preventiva no implica la desestimación del caso penal, sino que procede liberar al imputado y el caso continúa en la etapa en que se encuentre, tal como si se encontrara libre bajo fianza. Por su parte, cuando ocurre un menoscabo al derecho a juicio rápido, el caso se desestima y, de ordinario, regresa a la etapa inicial de causa probable para arresto. Véase L. Rivera Román, Los derechos de los acusados en los procedimientos penales bajo la Constitución de Puerto Rico y los Estados Unidos, XLVI (Núm. 2 Rev. Jur. UIPR 417 (2011-2012).

 El derecho a juicio rápido persigue un propósito dual. Por un lado, procura proteger al acusado contra su detención opresiva, minimizar sus ansiedades y pre *907 ocupaciones, y reducir las posibilidades de que se menoscabe la capacidad del acusado para defenderse. Pueblo v. García Vega, 186 DPR 592, 606 (2012); Pueblo v. Rivera Santiago, 176 DPR 559, 570 (2009). Por otro lado, se satisfacen las exigencias sociales de enjuiciar con premura a quienes son acusados de transgredir sus leyes. Pueblo v. García Vega, supra, pág. 607; Pueblo v. Rivera Santiago, supra, pág. 570. Lo anterior está unido al interés de evitar que una demora indebida obstaculice el procesamiento efectivo de los acusados, al dificultarse la prueba de los cargos más allá de duda razonable. Pueblo v. García Vega, supra, pág. 607.

 De hecho, el Art. 70 del Código Penal vigente contempla la posibilidad de dejar sin efecto la sentencia dictada cuando han transcurrido 10 años naturales en los cuales el convicto se halle gravemente enfermo y así lo certifique. 33 LPRA see. 5103.

 En cuanto a este asunto, el Tribunal Supremo de Estados Unidos resolvió hace décadas que el proceso requerido para cumplir con las garantías del debido proceso de ley es una interrogante constitucional que debe responderse primariamente por los tribunales. Véase Cleveland Board of Education v. Loudermill, 470 US 532 (1985). Véase, también, E. Chemerinsky, Constitutional Law: Principles and Policies, 2da ed., Nueva York, Ed. Aspen, 2002, Sec. 7.4.

 Como es sabido, cualquier persona que se encuentre detenida en virtud de una sentencia penal y alegue el derecho a ser puesta en libertad puede presentar una moción al amparo de la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, ante el tribunal sentenciador en cualquier momento después de dictada la sentencia, incluso cuando ya es final y firme. Para ello, se pueden invocar los fundamentos siguientes: (1) la sentencia fue impuesta en violación de derechos constitucionales o leyes tanto estatales como federales; (2) la falta de jurisdicción del tribunal para imponer la sentencia; (3) la sentencia excede de la pena dispuesta en ley, o (4) la sentencia está sujeta a ataque colateral por cualquier motivo. Id. A menos que la moción y los autos del caso demuestren que la persona no tiene remedio alguno, el tribunal señalará una vista para dilucidar la moción, se asegurará de que el peticionario ha incluido todos los fundamentos para solicitar el remedio, fijará una fianza en los casos apropiados y formulará las determinaciones de hecho y las conclusiones de derecho respecto a la misma. íd. Si el foro judicial determina que se cumple con alguno de los fundamentos mencionados, la referida regla procesal dispone que existen varios cursos de acción que deben seguirse, a saber: (1) dejar sin efecto la sentencia y excarcelar a la persona; (2) dictar una nueva sentencia, o (3) ordenar un nuevo juicio. Id. Véase, además, D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, lOma ed., San Juan, Ed. Inst, para el Desarrollo del Derecho, 2014, pág. 232.
Una moción bajo el inciso (4) de la citada Regla 192.1 es uno de los recursos procesales adecuados para alegar una violación al debido proceso de ley por motivo de la dilación excesiva, injustificada e irrazonable del Estado en ejecutar una sentencia penal.

 Recordemos que en nuestro ordenamiento jurídico la imposición de las penas tendrá como objetivos generales los siguientes: (1) la protección de la sociedad; (2) la justicia a las víctimas de delito; (3) la prevención de delitos; (4) el castigo justo al autor del delito en proporción a la gravedad del delito y a su responsabilidad, y (5) la rehabilitación social y moral del convicto. 33 LPRA see. 5011. Véase Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 440.

 Estos criterios han sido reconocidos por otras jurisdicciones como aspectos primordiales para evaluar el carácter razonable de un procedimiento penal, desde la tramitación de la causa hasta la ejecución de la sentencia. Véase E. Ruiz Vadillo, Algunas breves consideraciones sobre las dilaciones indebidas en el proceso penal español, disponible en http://www.mjusticia.gob.es/cs/Satellite/Portal/129234407 1899?blobheader=application%2Fpdf&blobheadernamel=Content-Disposition&blob headername2=EstudioDoctrinal&blobheadervaluel=attachment%3B+filename%3 D1993_1690.pdf&blobheadervalue2=1288777801869.