EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Marangely Nazario Aponte<br><br>Peticionaria | Certiorari<br><br>2017 TSPR 158<br><br>198 ____ |

Número del Caso: CC-2016-773

Fecha: 17 de agosto de 2017

Tribunal de Apelaciones:

      Región Judicial de Mayagüez y Utuado

Abogados de la parte peticionaria:

      Lcdo. Luis Gutiérrez Marcano
      Lcdo. Juan J. Troche Villanueva
      Lcda. Liesl Costa Rivera

Oficina del Procurador General:

      Lcdo. Luis R. Román Negrón
      Procurador General

      Lcdo. Steven Liong Rodríguez
      Procurador General Auxiliar

Materia: Sentencia del Tribunal con Voto Disidente y Opinión Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

       v.                     CC-2016-0773

Marangely Nazario Aponte

     Peticionaria

SENTENCIA

En San Juan, Puerto Rico, a 17 de agosto de 2017.

Este recurso nos permite resolver si el Tribunal de Apelaciones erró al revocar la desestimación de una denuncia contra una persona que tiene serias dificultades para oír y poder comunicarse, pero se le encontró causa probable para arresto sin que en la vista al respecto se le proveyera la asistencia de un intérprete. Debido a que en el expediente judicial no hay constancia de lo acontecido durante la vista de causa probable para arresto, este tribunal no ha podido evaluar los hechos procesales en los que la peticionaria basa su solicitud. Ya que se proveyó

para que la imputada esté asistida de intérprete en la vista preliminar y que esta no está privada de su libertad, confirmamos el dictamen del foro intermedio.

I

El 3 de diciembre de 2015, el Ministerio Público presentó una denuncia contra la Sra. Marangely Nazario Aponte, en la que se le imputó una violación del Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la "Ley para la Prevención e Intervención con la Violencia Doméstica", 8 LPRA sec. 631. La imputada compareció a la vista de determinación de causa probable para arresto acompañada de su madre y sin representación legal. Durante la vista, se sentó a declarar tanto el alegado perjudicado como la agente que llevó a cabo la investigación. Se determinó causa probable por el delito imputado, se fijó una fianza de $1,000 y se pautó la vista preliminar.

La señora Nazario Aponte compareció al tribunal para la celebración de la vista preliminar en la fecha señalada e informó que contrataría abogado. La magistrada que presidía la sala hizo constar en el documento titulado "Notas y resolución del magistrado" que la imputada era "audio impedida" y que "posiblemente necesit[aría] un intérprete de señas". En vista de ello, se señaló la vista para una fecha posterior.

Luego de varios incidentes procesales, la vista preliminar quedó pautada para el 18 de marzo de 2016. No obstante, el 4 de marzo de 2016 la señora Nazario Aponte

presentó una moción de desestimación de la denuncia. Alegó que era sorda y no conocía el lenguaje de señas, pero que era capaz de leer labios. Expuso que durante la vista de causa para arresto no se le proveyeron los servicios de un intérprete de lectura de labios ni acomodo razonable alguno. Ante ello, sostuvo que se le violentó el debido proceso de ley y solicitó la desestimación de la denuncia. Sin embargo, no presentó ante el foro primario ni la regrabación ni una transcripción de la vista de causa probable para arresto. Por esto, aunque la peticionaria alegó que el Tribunal de Primera Instancia conocía de su impedimento, no hay constancia de ello en el expediente judicial. Por moción separada solicitó que se ordenara la presencia de un intérprete de lectura de labios en la vista preliminar. En atención a su reclamo, el tribunal ordenó la contratación de los servicios de un intérprete, con cargo al erario.

El Ministerio Público se opuso a la moción de desestimación de la denuncia. Argumentó que cualquier defecto que hubiere acontecido en la vista de causa para arresto podía subsanarse en la vista preliminar. Por eso, puntualizó que el mismo día en que la señora Nazario Aponte presentó su solicitud de desestimación, solicitó también que se contratara un intérprete de lectura de labios que la asistiera en la vista preliminar señalada, lo que se le concedió.

El 18 de marzo de 2016, el Tribunal de Primera Instancia desestimó la denuncia, por violación del debido proceso de ley. Inconforme, el Ministerio Público presentó una solicitud de *certiorari* ante el Tribunal de Apelaciones en la que señaló que la moción de desestimación era prematura debido a la etapa en que se encontraban los procedimientos. Fundamentó su posición en lo resuelto en Pueblo v. Jiménez Cruz, 145 DPR 803 (1998). Allí resolvimos que la celebración de una vista preliminar para acusar subsana cualquier error que hubiera habido en la determinación de causa probable para arrestar. Por esa razón determinamos que una moción de desestimación presentada antes de la vista preliminar, al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II, es prematura, ya que en ese momento no se había presentado acusación alguna que se pudiera desestimar. Así pues, la desestimación decretada solo conseguiría prolongar sin necesidad el proceso judicial.

Eventualmente, el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia. Determinó que el foro primario erró al declarar con lugar una moción de desestimación prematura. Señaló que el momento oportuno para presentar una moción de desestimación en los casos en los que hay una denuncia por delito grave es luego de la presentación de la acusación, pues cualquier defecto procesal cometido en la etapa de causa probable para arresto se puede subsanar en la vista preliminar.

Consecuentemente, la señora Nazario Aponte acudió ante nos mediante una petición de *certiorari* en la que alegó que el Tribunal de Apelaciones erró al determinar que no procedía la desestimación de la denuncia a pesar de que la vista de causa para arresto se celebró contra una persona sorda sin proveérsele acomodo razonable. Aclaró que la defensa solicitó la desestimación de la denuncia al amparo del debido proceso de ley y no al amparo de la Regla 64(p) de Procedimiento Criminal, <u>supra</u>. Asimismo, arguyó que estuvo presente durante la vista de causa para arresto, sin asistencia de abogado, y que el fiscal sentó a declarar a la presunta víctima y a la agente investigadora. Por tal razón, indicó que se violó su derecho a confrontación, ya que no pudo ejercerlo por no entender lo que sucedía. Señaló que el representante del Ministerio Público admitió durante un señalamiento de vista preliminar que la agente declaró en posición lateral hacia ella durante la vista. También indicó que al desestimar la denuncia, el tribunal se expresó respecto a la importancia de que en la nueva vista de causa para arresto la imputada tuviera la asistencia de un intérprete y los testigos declararan en posición frontal hacia ella. Finalmente, alegó que su madre no sirvió como interprete durante la vista de causa para arresto.

Por su parte, el Estado argumentó que el Tribunal de Apelaciones actuó conforme a derecho debido a que se amparó en la clara y categórica normativa jurisprudencial

que regula el mecanismo procesal de la solicitud de desestimación en encausamientos criminales por delitos graves. Así, indicó que según esta normativa, en casos en los que se presente denuncia por delito grave, una moción de desestimación solo puede presentarse luego de celebrada la vista preliminar. Añadió que no se violó el derecho a confrontar testigos porque este no aplica en la vista de causa para arresto, donde ni siquiera es necesario que el fiscal presente testigos.

II

La señora Nazario Aponte alega que el Tribunal de Apelaciones erró al revocar la sentencia del Tribunal de Primera Instancia porque la desestimación de la denuncia no fue al amparo de la Regla 64(p) de Procedimiento Criminal, supra. En cambio, sostiene que la desestimación estuvo basada en que durante la vista de causa probable para arresto se violó su derecho a que se le proveyera acomodo razonable para garantizar una comunicación efectiva al no proveérsele un intérprete de señas o no colocarla en un lugar donde ella pudiera leer los labios de los testigos y comprender lo que decían. Por consiguiente, argumenta que este caso trata de un reclamo de violación del debido proceso de ley, por celebrarse una vista de causa para arresto contra una persona sorda que no pudo comprender lo que sucedió allí.

En Pueblo v. Branch, 154 DPR 575, 581 (2001), resolvimos que para un imputado que no entiende las incidencias de un procedimiento judicial, la asistencia

de un intérprete durante todo el proceso adquiere una importancia tridimensional: primero, hace posible el interrogatorio de los testigos; segundo, facilita a los demandados o acusados poder entender la conversación entre abogados, testigos y el juez; y tercero, hace viable la comunicación entre abogado y cliente. Así, indicamos que la concesión de un intérprete a una persona que solo habla el idioma inglés, luego de que se demuestra su necesidad real de esa asistencia, constituye un imperativo constitucional que los tribunales no deben soslayar. Por lo tanto, concluimos que, ante estas circunstancias, los tribunales deberán tomar las medidas apropiadas para garantizar que los imputados que tengan esta limitación puedan comprender las incidencias del proceso mediante el uso de un intérprete o mediante otro medio igualmente eficaz. En ese caso, "surg[ía] del expediente que las advertencias legales, luego de su arresto, fueron hechas a Branch en el idioma inglés" y que, "[a] partir de ese momento hubo un reclamo constante de su defensa de que se le asignara un intérprete". Íd., pág. 587. Resolvimos que el que el tribunal asigne un intérprete permanente para el juicio en su fondo constituye un reconocimiento expreso de que el imputado tenía una necesidad real de esa asistencia. Íd.

Este derecho no es exclusivo del juicio en su fondo, sino que se extiende a la vista de causa probable para acusar. Como la vista preliminar es el mecanismo procesal para "evitar que se someta a un ciudadano en forma

arbitraria e injustificada a los rigores de un proceso criminal", cobra particular importancia que los tribunales garanticemos el pleno ejercicio de esos derechos en dicha etapa. Íd., págs. 582-583.

Examinado el expediente ante nuestra consideración, es evidente que los problemas de audición de la señora Nazario Aponte ameritaban que estuviera asistida de un intérprete durante la celebración de la vista de causa para arresto. Ahora bien, no surge del expediente que el tribunal supiera del impedimento auditivo de la imputada durante la vista de causa probable para arresto, pues no hay constancia sobre lo acontecido en esa etapa, más allá de la determinación del magistrado. Recae sobre el imputado el peso de demostrar al tribunal que no entiende el proceso y que por ello necesita un intérprete. Íd., pág. 582. De todos modos, la magistrada asignada a la vista preliminar subsiguiente hizo constar en sus notas que la imputada era "audio-impedida" y que "posiblemente necesit[aría] un intérprete de señas". Así, posteriormente, el tribunal declaró con lugar la solicitud de intérprete para la vista preliminar presentada por la señora Nazario Aponte.

Ahora bien, la interrogante que tenemos que resolver no es la necesidad del intérprete ni si se le violaron los derechos a la peticionaria en la vista de Regla 6, supra, sino si la moción de desestimación presentada ante el Tribunal de Primera Instancia es prematura. Asimismo, debemos resolver si la violación del debido proceso de

ley que alega la señora Nazario Aponte puede subsanarse mediante la celebración de la vista preliminar con todas las garantías aplicables, incluyendo la presencia de un intérprete de labios.

III

El mecanismo procesal que provee la Regla 64(p) de Procedimiento Criminal, supra, constituye un instrumento adecuado para vindicar la lesión de los derechos de un acusado en etapas tempranas del trámite judicial, por razón de carecer de un intérprete, aunque tenía una necesidad real de ello. Pueblo v. Branch, supra, pág. 584. Hemos reconocido que al amparo de esta regla el acusado puede impugnar la determinación de causa por dos fundamentos: (1) insuficiencia de la prueba, o (2) cuando se haya violado algún derecho procesal que se tenía que garantizar en la vista correspondiente. Pueblo v. Negrón Nazario, 191 DPR 720, 735 (2014); Pueblo v. Rivera Vázquez, 177 DPR 868, 878 (2010).

Cuando se imputa un delito grave, no puede presentarse una acusación hasta después de que haya recaído una determinación de causa probable para ello, como resultado de la vista preliminar celebrada. Es entonces cuando se autoriza al Ministerio Público a presentar la acusación correspondiente. Por lo tanto, en un caso por delito grave, la moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra, no tiene otro efecto que el de revisar la determinación de causa probable para acusar hecha después

de haberse celebrado la vista preliminar. En consecuencia, no puede revisarse mediante esa regla la determinación de causa probable para arrestar por un delito grave. Pueblo v. Jiménez Cruz, supra, pág. 815.

En estos casos, el momento oportuno para presentar una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra, es con posterioridad a la presentación de la acusación. Pueblo v. Jiménez Cruz, supra, págs. 815-816. Esto se debe a que la determinación positiva de causa probable para acusar, luego de celebrada la vista preliminar, subsana cualquier error que hubiese habido en la determinación de causa probable para arrestar. Íd., pág. 815.

Distinto a la etapa de Regla 6, supra, durante la vista preliminar los derechos constitucionales a estar asistido de abogado y a confrontarse con el testimonio de cargo, tienen pleno vigor. Así, se trata de un procedimiento más formal, en el cual el imputado tiene más derechos procesales, que "constituye una revisión de la determinación de causa probable para el arresto, en cuanto al aspecto central de si se puede o no continuar el proceso criminal contra el imputado". E.L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, Cap. 21, pág. 48.

En vista de que el delito imputado en este caso es de carácter grave y aún no se ha presentado acusación alguna que pueda ser desestimada, la moción de desestimación presentada por la señora Nazario Aponte es prematura. Por

otra parte, la ausencia de asistencia de intérprete durante la vista de causa para arresto se subsanará con la presencia de un intérprete en la vista preliminar, según ordenó el Tribunal de Primera Instancia. Pueblo v. Jiménez Cruz, supra, pág. 815.

Puntualizamos que la peticionaria no se encuentra privada de su libertad ni se ha violado su derecho a que la vista preliminar se celebre en el plazo reglamentario. Compárese Pueblo v. Rivera Rodríguez, 150 DPR 428 (2000), donde desestimamos las denuncias por delitos graves contra un imputado que se encontraba sumariado sin que se le hubiera celebrado la vista preliminar. Por eso, en este caso es innecesario conceder un remedio adicional inmediato, antes de la vista preliminar.

Esa vista es el mecanismo procesal más expedito que tiene nuestro ordenamiento para que se efectúe una "revisión de la determinación de causa probable para el arresto, en cuanto al aspecto central de si se puede o no continuar el proceso criminal contra el imputado"...[1], pero esta vez con la presencia de un intérprete, según ordenó el Tribunal de Primera Instancia. Eso salvaguarda los derechos de la persona imputada sin tener que anular o dilatar el proceso penal. Así hacemos un balance entre los intereses del imputado y el interés del público en que siga adelante el caso penal, de manera adecuada y sin dilaciones. Resolvemos que se proveerá el intérprete en

---

[1] Pueblo v. Jiménez Cruz, supra, pág. 815, citando a Chiesa, op. cit., pág. 48.

vista preliminar y garantizamos que no se acusará a una persona que no comprenda el proceso en su contra. Para eso no hay que desestimar las denuncias ni anular el proceso penal en esta etapa.

IV

Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Apelaciones.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disintió e hizo constar la siguiente expresión: "Por los fundamentos que expuse en Pueblo de Puerto Rico v. Almodóvar Negrón, 2017 TSPR 142, 198 DPR ___ (2017) (Op. disidente, J.P. Oronoz Rodríguez), disiento de la determinación que hoy emite una Mayoría de este Tribunal. La falta de un acomodo razonable que garantice que una persona con impedimentos auditivos comprenda el procedimiento criminal que se ventila en su contra constituye, incluso en la etapa de Regla 6, una violación clara del debido proceso de ley. En estos escenarios, considero que la moción de desestimación provee un mecanismo procesal adecuado para vindicar un derecho tan básico". La Jueza Asociada señora Rodríguez Rodríguez disintió e hizo constar la siguiente expresión: "Según hemos refrendado asiduamente, el debido proceso de ley garantiza a todo imputado de delito a entender los procedimientos bajo los cuales se le juzga. Ello pues, el entendimiento de tales procedimientos es el cimiento para una adecuada defensa; derecho que inicia junto a la vista

de causa para arresto (Regla 6). Es por ello que, en las instancias en que un imputado comparece a la vista de Regla 6, nace la obligación del Estado de dar cumplimiento a esta garantía constitucional. En el presente caso, la Sra. Marangely Nazario Aponte compareció a la vista de Regla 6 -y tras haberse evidenciado su diversidad auditiva- el Estado estaba obligado a proveer el acomodo razonable para que ésta comprendiera el procedimiento penal que obraba en su contra". El Juez Asociado señor Estrella Martínez emitió Voto disidente. El Juez Asociado señor Colón Pérez emitió Opinión disiente.

Sonnya Isabel Ramos Zeno<br>
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>        v.<br><br>Marangely Nazario Aponte<br><br>    Peticionaria | CC-2016-773 | *Certiorari* |

Voto disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 17 de agosto de 2017.

Lamentablemente, hoy se repite la historia en que una Mayoría de este Tribunal echa mano a una ficción jurídica para ignorar la cruda realidad que enfrenta una mujer sorda en el sistema judicial. Con esa ficción, siguen desprotegidos muchos de los ciudadanos y ciudadanas con barreras lingüísticas, que son expuestos a los rigores de una acción penal sin la asistencia de un intérprete. Nuevamente, se le priva a una ciudadana de las garantías mínimas del debido proceso de ley que exigen que se le provean los mecanismos adecuados para que pueda entender y comprender **todo** el proceso llevado en su contra. Ello, mediante el uso de rigorismos excesivos que se fundamentan en la aplicación restrictiva de

determinadas reglas procesales y su jurisprudencia interpretativa.

Reconozco la importancia del rol que ejerce el Estado para garantizar el orden público y procesar a todo aquel que violente las leyes penales, pero tal función no debe ser ejercida en detrimento de los derechos constitucionales fundamentales de los ciudadanos y ciudadanas. Es por ello que en este caso resultaba imperativo realizar un justo balance entre la garantía constitucional que protege el derecho de todo ciudadano y ciudadana a un debido proceso de ley y el interés apremiante del Estado en procesar a los imputados de delito. Nociones fundamentales de justicia exigían que se salvaguardara el derecho de la ciudadana en este caso a un debido proceso. Ante los recientes intentos fallidos por lograr que una Mayoría de este Tribunal realice ese justo balance y provea verdadera justicia a las personas con barreras lingüísticas, DISIENTO.

Examinemos el trasfondo fáctico y procesal de la controversia de epígrafe.

I

El presente caso tiene su génesis en una denuncia presentada el 3 de diciembre de 2015 en contra de la Sra. Marangely Nazario Aponte (señora Nazario Aponte o peticionaria), en la cual se le imputó haber infringido el Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de

1989, según enmendada, 8 LPRA sec. 631. Durante la celebración de la vista de determinación de causa probable para arresto (Regla 6), la peticionaria estuvo acompañada de su madre, pero compareció sin representación legal. Luego de escuchar el testimonio del alegado perjudicado y la agente que investigó el incidente, el tribunal determinó causa para arrestar a la señora Nazario Aponte, fijó una fianza de $1,000 y pautó la fecha para la celebración de la vista preliminar.

En la fecha señalada, la peticionaria compareció al tribunal e informó que estaba en trámites para la contratación de representación legal. Ante ello, la jueza que presidía la vista preliminar señaló la vista para una fecha posterior e hizo constar en las *Notas y resolución del magistrado* que la señora Nazario Aponte era audio impedida y, posiblemente, necesitaría un intérprete de señas. Luego de varias incidencias procesales, la vista preliminar se señaló para el 18 de marzo de 2016.

Así las cosas, el 4 de marzo de 2016, la peticionaria presentó una *Moción de desestimación de la denuncia al amparo del debido proceso de ley*. Expuso que "es sorda y no conoce el lenguaje de señas, pero sí puede leer los labios", por lo que requería un acomodo razonable para poder comprender los procedimientos en su contra. Asimismo, señaló que, durante la vista de

Regla 6, no se le proveyeron los servicios de un intérprete en labio lectura, ni ningún acomodo razonable. Ello, a pesar de que el Tribunal conocía de su condición. Por tanto, sostuvo que la ausencia de un intérprete le impidió entender el proceso y, con ello, se le privó de un proceso justo e imparcial. Del mismo modo, presentó una *Moción solicitando intérprete y/o acomodo razonable*, mediante la cual solicitó que se ordenara la presencia de un intérprete de labio lectura en la vista preliminar.

A raíz de lo anterior, el foro primario dispuso para la contratación de los servicios de un intérprete de labios que compareciera a la vista preliminar señalada. Por su parte, el Ministerio Público se opuso a la desestimación de la denuncia y, en esencia, adujo que ya se había ordenado la comparecencia de un intérprete para la vista preliminar, por lo que los errores cometidos en la vista de Regla 6 serían subsanados.

Llegado el día de la celebración de la vista preliminar, la jueza que presidía atendió en corte abierta la solicitud de desestimación presentada por la señora Nazario Aponte al amparo del debido proceso de ley. Según se desprende de la transcripción de la vista, el tribunal brindó amplia oportunidad a las partes para exponer sus posturas en cuanto a la violación al debido proceso de ley en la vista de Regla

6. Particularmente, el Ministerio Público se opuso con el argumento de que cuando la agente comenzó a investigar el caso y se percató de que se trataba de una persona sorda, hizo las gestiones para obtener un intérprete de señas. Sin embargo, justificó la ausencia del intérprete en la Regla 6 con el planteamiento de que la señora Nazario Aponte no conocía el lenguaje de señas, por lo que la agente investigadora no hizo más trámites para obtener un intérprete que pudiera comunicarse efectivamente con la peticionaria. De igual forma, el Ministerio Público reconoció que en la vista de Regla 6 la agente testificó de lado a la señora Nazario Aponte, por lo que no pudo leer sus labios mientras declaraba. Por otro lado, la defensa arguyó que si bien el *quantum* de prueba que se requiere en etapa de Regla 6 es menor, ello no implica que la peticionaria no tiene derecho a que se le garantice un debido proceso de ley en todas las etapas del procedimiento criminal, inclusive en etapas investigativas.

Luego de evaluar los argumentos de ambas partes, el Tribunal de Primera Instancia determinó que procedía desestimar la denuncia por violación al debido proceso de ley. Puntualizó que nada le impedía al Ministerio Público someter nuevamente el caso para la celebración de una vista de Regla 6 con un intérprete que asistiera a la peticionaria.

Inconforme, el Ministerio Público recurrió al Tribunal de Apelaciones mediante un recurso de *certiorari*. En éste, planteó que la solicitud de desestimación fue prematura, basándose en que la determinación de causa probable para acusar subsana cualquier error cometido en la vista de Regla 6. Específicamente, fundamentó su recurso en lo resuelto en Pueblo v. Jiménez Cruz, 145 DPR 803 (1998), a los efectos de que una moción de desestimación al amparo de la Regla 64 (p) presentada antes de la vista preliminar es prematura.

Posteriormente, el foro apelativo intermedio acogió la postura del Ministerio Público y, en consecuencia, revocó al Tribunal de Primera Instancia. No obstante, la Hon. Aida Nieves Figueroa emitió una Opinión disidente, en la cual expresó lo siguiente:

> No solamente se le está diciendo a la señora Nazario Aponte que no puede reclamar su derecho al debido proceso de ley hasta pasada la etapa de vista preliminar, sino que también le advierte que, cuando por fin surja su derecho a quejarse, ya no tendrá agravio que reclamar porque todo habrá quedado subsanado en esa segunda etapa. Para todos los efectos prácticos, lo que el Panel le está diciendo a la señora Nazario Aponte es que el derecho al debido proceso de ley no existe en la etapa de Regla 6.
> Es muy sencillo. Los derechos existen en la medida en que el ciudadano tenga un vehículo para reclamarlos. En la medida que el Panel insiste en que la señora Nazario Aponte no tiene mecanismo alguno para quejarse de la violación al derecho al debido proceso de ley que ha sufrido, le niega

*de facto* el mismo. <u>Opinión disidente Juez Nieves Figueroa</u>, Apéndice del *certiorari*, pág. 124.

En desacuerdo con el dictamen emitido por el Tribunal de Apelaciones, la peticionaria compareció ante nos mediante una petición de *certiorari.* Particularmente, arguye que el foro apelativo intermedio erró al determinar que no procedía la desestimación de la denuncia. Ello, a pesar de que la vista de causa probable para arresto se celebró sin el acomodo razonable de proveerle un labio lector, y sin el posicionamiento adecuado de los testigos del Ministerio Público para poder leer los labios y entender el proceso. Asimismo, aclara que su reclamo está basado en el derecho a un debido proceso de ley, según consagrado en la Constitución de Puerto Rico y en la de los Estados Unidos, por lo que va más allá del mecanismo que provee la Regla 64 (p) de Procedimiento Criminal. En ese sentido, destaca que "una persona sorda no puede ser sometida a un proceso justo bajo los mismos criterios que se ejercen contra una persona que puede escuchar". Petición de *certiorari*, pág. 3. Ello, pues se trata de aplicar la misma justicia y ofrecer un trato justo a una comunidad que, por sus problemas de audición y limitaciones relacionadas, se encuentran en una posición de desventaja y vulnerabilidad en comparación con el resto de la sociedad.

Además, reitera que estuvo presente en la vista de Regla 6 y los testigos de cargo prestaron su testimonio en posición lateral hacia ella, por lo cual no tuvo la oportunidad de leer los labios y entender lo que estaba sucediendo en la vista. Por tanto, sostiene que tampoco pudo ejercer su derecho a confrontar los testigos utilizados en su contra. Por otra parte, la señora Nazario Aponte deja claro que su madre no fungió como su intérprete durante la vista de Regla 6, como pretendió establecer el Ministerio Público mientras argumentaba en oposición a la desestimación de la denuncia ante el foro primario.

De otra parte, el Ministerio Público alega que el Tribunal de Apelaciones actuó correctamente, toda vez que en casos de delito grave, una moción de desestimación al amparo de la Regla 64 (p) de Procedimiento Criminal, sólo puede presentarse luego de celebrada la vista preliminar. También arguye que no se violentó el derecho a confrontación, porque no aplica en etapa de Regla 6, pues ni siquiera es necesario que el Ministerio Público presente testigos.

Así las cosas, una Mayoría de este Tribunal determinó que procedía confirmar el dictamen emitido por el foro apelativo intermedio, toda vez que "se proveyó para que la imputada esté asistida de intérprete en la vista preliminar y que esta no está privada de su libertad". Sentencia, pág. 1. Como he

adelantado, considero que la ausencia de un intérprete en la vista de causa probable para arresto (Regla 6) constituye una seria y crasa violación a las garantías mínimas del debido proceso de ley y, por tanto, no es uno de esos errores que pueden subsanarse en la vista preliminar. Véase Voto particular disidente emitido por el Juez Asociado señor Estrella Martínez en El Pueblo de Puerto Rico v. Lory Frey, res. el 7 de junio de 2017, 2017 TSPR 97. En consecuencia, disiento vehementemente del curso de acción seguido por una Mayoría de este Tribunal.

Con ello en mente, procedo a exponer el marco jurídico aplicable. Veamos.

## II

### A.

Sabido es que la Constitución de Puerto Rico en su Artículo II, Sección 7, reconoce como derecho fundamental del ser humano el derecho a la libertad. Además, dispone que ninguna persona será privada de su libertad sin un debido proceso de ley, ni se le negará la igual protección de las leyes. Art. II, Sec. 7, Const. ELA, LPRA, Tomo I. La Decimocuarta Enmienda de la Constitución de los Estados Unidos provee igual protección a los ciudadanos y ciudadanas. Enmda. XIV, Const. EE. UU. Para activar esta cláusula constitucional del debido proceso de ley, en su vertiente procesal, se requiere la existencia de un

interés libertario o propietario y que ese interés sea amenazado por la intervención del Estado. Establecidas estas dos condiciones, procede determinar cuál es el procedimiento a seguir. Primordialmente, se exige que el procedimiento sea justo. Sin embargo, existen otros componentes básicos del debido proceso de ley, a saber: (1) notificación adecuada; (2) oportunidad de ser oído, y (3) derecho a defenderse. Voto particular disidente emitido por el Juez Asociado señor Estrella Martínez en Pueblo v. Crespo Cumba, 193 DPR 899, 911 (2015); Pueblo v. Villafañe Marcano, 183 DPR 50, 71 (2011); Pueblo v. Esquilín Maldonado, 152 DPR 257, 262 (2000).

Este Tribunal ha reconocido que, en el ámbito penal, **estas garantías del debido proceso de ley se extienden a todas las etapas del procedimiento criminal**. Particularmente, en Pueblo v. Esquilín Maldonado, expresó que "se ha extendido la aplicación de los componentes del debido proceso de ley a las actuaciones del Estado **antes del arresto o inicio de la acción penal**". Pueblo v. Esquilín Maldonado, supra (énfasis suplido). Asimismo, en Pueblo v. Moreno González, expuso que el debido proceso de ley exige que el Estado aplique las normas penales a los ciudadanos y ciudadanas con rigurosa justicia y precisión para que "se minimicen los riesgos de penalizar a un inocente, se proteja a las personas del poder abusivo por parte del Estado y se genere una atmósfera de justicia

imparcial". <u>Pueblo v. Moreno González</u>, 115 DPR 298, 301 (1984). Igualmente, manifestó que por ello **se requiere una compleja red de requisitos procesales que ordenan el proceso de investigación**, adjudicación y ejecución de un procedimiento penal. <u>Íd.</u>

La necesidad de aplicar las garantías mínimas del debido proceso de ley en **todas las etapas del proceso criminal**, cobra mayor relevancia cuando el Estado interviene con ciudadanos que enfrentan barreras lingüísticas. <u>Véase</u> Jeffrey B. Wood, <u>Protecting Deaf Suspects' Right to Understand Criminal Proceedings</u>, 75 J. Crim. L. & Criminology 166 (1984). Ello, toda vez que se trata de individuos que presentan dificultad para comunicarse e integrarse culturalmente, por lo que resulta imperativo garantizarle un debido proceso de ley para proveerle igualdad de acceso a nuestro sistema legal. Se trata de principios de esencial igualdad humana, según reconocidos en nuestra Carta Magna. Particularmente, se establece que "[l]a dignidad del ser humano es inviolable" y que "[t]odos los hombres son iguales ante la [l]ey". Art. II, Sec. 1, Const. ELA, LPRA, Tomo I. En ese sentido, se dispone que "[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas". <u>Íd.</u>

Cónsono con estos principios de estirpe constitucional, este Tribunal ha reconocido que

constituye una violación al debido proceso de ley que un ciudadano que tiene graves problemas auditivos, que le impiden oír y comunicarse, sea sometido a un procedimiento criminal sin la asistencia de un intérprete. Pueblo v. Moreno González, supra. Más importante aún, se destacó que "el sistema legal ha probado ser una barrera enorme para las personas con problemas auditivos", por lo que "[e]l sistema judicial, sus administradores y los abogados deben adquirir sensibilidad hacia las necesidades de comunicación de las personas sordas con el propósito de hacerles accesible el sistema legal". Íd., págs. 301-302. Consciente de los escollos que suelen imponerse a los ciudadanos con problemas de audición en el sistema judicial, este Tribunal expresó que, sin duda alguna, **ello amerita que la persona esté asistida de un intérprete durante todo el proceso**. Íd., pág. 304. Por tanto, afirmó que "[l]a falla en que incurre un tribunal de justicia al no proveerle un intérprete a un acusado que tiene una *necesidad real* de ello acrecenta las posibilidades de que se penalice a un inocente, en lugar de minimizarlas". Íd., pág. 306.

Más recientemente, en Pueblo v. Branch, este Tribunal reafirmó la importancia de proveer asistencia de un intérprete a los imputados de delito durante **todo** el proceso criminal. Pueblo v. Branch, 154 DPR 575, 579-580, 587 (2001). Enfatizó que proveer asistencia de

intérprete durante **todo** el procedimiento penal es "consecuencia lógica de la noción fundamental, inmersa en la cláusula constitucional que garantiza un debido proceso de ley, de que una persona no debe estar sujeta a un proceso judicial injusto". Íd., pág. 580. En armonía con lo anterior, en ese caso se resolvió que conceder un intérprete a una persona que no entiende el idioma español, luego de que demuestra su necesidad real, constituye un imperativo constitucional del debido proceso de ley que no debe ser soslayado por los tribunales. Íd., pág. 582. Se destacó que los tribunales deben tomar las medidas apropiadas para garantizar que los imputados de delito que tengan estas limitaciones puedan entender el proceso mediante un intérprete u otro medio igualmente eficaz. Íd. De igual manera, se determinó que la ausencia de intérprete lesionó sus derechos constitucionales a ser juzgado en un proceso celebrado conforme al debido proceso de ley. También se resaltó que **el hecho de que esta ausencia haya ocurrido en etapas previas al juicio en su fondo, no altera esa realidad**. Íd., pág. 587.

Aunque los casos Pueblo v. Moreno González, supra, y Pueblo v. Branch, supra, trataron la necesidad de proveer un intérprete a imputados de delito con barreras lingüísticas en etapa de juicio en su fondo y vista preliminar, respectivamente, considero que igual trato debe aplicarse en la vista de Regla 6. De hecho,

en esos casos se reconoció que el imperativo constitucional de conceder asistencia de un intérprete a un imputado para que comprenda los procesos en su contra **"no es exclusivo del juicio en su fondo" y "[s]e extiende a etapas previas"**. <u>Pueblo v. Branch</u>, pág. 582 (énfasis suplido). No podía ser de otra forma, y así también lo han reconocido otras jurisdicciones. Veamos.

**B.**

Varios estados de la Unión han adoptado estatutos en un esfuerzo por, de algún modo, implementar y garantizar los derechos constitucionales contenidos en la Decimocuarta, Sexta y Quinta Enmienda de la Constitución de los Estados Unidos. Así, por ejemplo, en North Carolina se estatuyó que si una persona sorda es arrestada por una alegada violación a las leyes penales del estado, el oficial del orden público que conduzca el arresto solicitará inmediatamente al tribunal la asignación de un intérprete cualificado, para poder efectuar cualquier interrogatorio, advertencia, notificación de derechos, vista para fijar fianza o cualquier otro procedimiento preliminar. NCGSA sec. 8B-2(d). Asimismo, en ese estado se dispuso que cualquier declaración, respuesta o admisión tomada de una persona sorda sin la asistencia de un intérprete cualificado será inadmisible en el tribunal. <u>Íd.</u> En Kentucky y Oklahoma se han adoptado disposiciones

similares. KRS sec. 30A.400(1)(2); 63 Okl. St. Ann. sec. 2410.

Por otro lado, en Arizona también se ha dispuesto que en casos en que se arreste a una persona sorda, el oficial que realice el arresto, su supervisor o el tribunal solicitará un intérprete cualificado para el interrogatorio, declaraciones que ofrezca la persona sorda o las advertencias referentes al privilegio de no autoincriminarse. ARS sec. 12-242(C). De igual manera, en ese estado se concede la asistencia de un intérprete en los procedimientos ante el gran jurado y, además, para las consultas y reuniones con su abogado en preparación para cualquier procedimiento criminal. Íd., sec. 12-242(A). Asimismo, se establece que si la comunicación que transmite la persona sorda a través del intérprete es privilegiada, el privilegio también se extiende al intérprete. Íd., sec. 12-242(E). Además, en este estado, se dispone que si el intérprete o la persona sorda determina que no se ha logrado una comunicación efectiva entre ellos, el tribunal permitirá que se nombre otro intérprete para que funja como intermediario entre ellos durante los procedimientos. Íd., sec. 12-242(F).

Por otra parte, en Florida se provee que cuando una persona sorda es arrestada y está bajo custodia, se concederán los servicios de un intérprete cualificado antes del interrogatorio. FL ST sec. 901.245. Si no

puede proveerse un intérprete, el oficial interrogará o tomará declaraciones de la persona sorda por escrito para que puedan presentarse ante el tribunal. Íd.

En Kansas, se provee la asistencia de un intérprete cualificado en cualquier procedimiento judicial que resulte en el confinamiento de la persona sorda o en la imposición de una sanción penal en su contra. KSA 75-4351. Además, se conceden los servicios del intérprete antes de cualquier intento de interrogar u obtener una declaración de la persona sorda que sea arrestada por una alegada violación de las leyes penales del estado. Íd.

De otra parte, en Minnesota se estatuye que se asignará un intérprete cualificado para que asista a la persona sorda en cualquier procedimiento que le exponga a una sanción penal, confinamiento o confiscación de su propiedad, y en cualquier proceso que anteceda ese procedimiento. MSA sec. 611.32. También se dispone que luego de su detención o arresto, el oficial del orden público inmediatamente hará los arreglos para obtener un intérprete cualificado lo más pronto posible. Con la asistencia del intérprete, el oficial explicará a la persona sorda los cargos en su contra y todos los procesos relacionados con su detención y su puesta en libertad. Igualmente, se provee un intérprete antes de comenzar un interrogatorio u obtener declaraciones. Íd.

En Montana, se ordena la asignación de un intérprete cualificado para que asista a la persona sorda en cualquier caso ante un gran jurado y en su preparación con su abogado, así como en cualquier procedimiento en el cual esté sujeto a confinamiento o a sanción penal, y en cualquier proceso que preceda. MCA 49-4-503(1)(3)(a). De igual manera, se establece que el oficial del orden público proveerá un intérprete cualificado a la persona sorda antes del interrogatorio o de obtener una declaración. Íd., 49-4-503(3)(b).

Por otro lado, en New Hampshire se preceptúa que siempre que una persona sorda sea arrestada por alguna alegada violación penal, que conlleve encarcelamiento o multa en exceso de $100, o ambos, no se permitirá ningún intento de interrogar u obtener una declaración hasta que se provea un intérprete cualificado. N.H. Rev. Stat. sec. 521-A:3.

Similarmente, en North Dakota se dispone que inmediatamente después de que una persona sorda es arrestada por alegada violación de una ley penal, en que la pena incluya encarcelamiento o multa en exceso de $100, o ambos, se asignará un intérprete. ND ST 28-33-02(2). En ese sentido, se establece que no se permitirá ningún intento de interrogar o tomar una declaración hasta que se obtenga un intérprete. Íd.

Finalmente, en Oregon se provee que tras el arresto de una persona sorda, y antes de interrogar o

tomar una declaración de ésta, el oficial obtendrá un intérprete cualificado lo antes posible para que asista a esa persona. ORS sec. 133.515.

Estas disposiciones legales estatales no son meras bondades o dádivas, sino que están ancladas en garantías constitucionales y en el andamiaje de la *Americans with Disabilities Act* (ADA). <u>Véase</u> 42 USC secs. 12131-12134. Al amparo de la ADA, se requiere que los tribunales provean la asistencia de intérpretes cualificados en lenguaje de señas, así como otros mecanismos alternativos -que podrían incluir la transcripción simultánea de los procedimientos o el uso de sistemas de asistencia auditiva- que aseguren la efectiva comunicación con las personas sordas. 28 CFR sec. 35.160. Asimismo, conscientes de que las necesidades de cada persona sorda varían, según su condición y otros factores sicológicos o culturales, se le concede deferencia a la persona sorda al momento de determinar cuál es el mecanismo adecuado para asegurar una comunicación efectiva. Particularmente, se dispuso lo siguiente: "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities". 28 CFR 35.160(b)(2). Por tanto, como entidad pública sujeta a las disposiciones de la ADA, igualmente debemos garantizar a las personas sordas los mecanismos adecuados para

asegurarle una comunicación efectiva en su interacción con nuestro sistema de justicia.

**C.**

En la esfera del Derecho Internacional, también se ha reconocido la necesidad de salvaguardar el derecho de los imputados de delito con barreras lingüísticas a la asistencia de un intérprete cualificado durante todo el proceso criminal. La Declaración Universal de Derechos del Hombre (Declaración Universal) dispone que "[t]odos los seres humanos nacen libres e iguales en dignidad y derechos". Declaración Universal de Derechos del Hombre, A.G. Res. 217(III) A, N.U. Doc. A/RES/217 (III) (10 de diciembre de 1948). Del mismo modo, en previsión de la discriminación en contra de los ciudadanos y ciudadanas con barreras lingüísticas, se establece que "toda persona tiene todos los derechos y libertades proclamados en esta Declaración, sin distinción alguna de raza, color, sexo, **idioma**, religión, opinión política o de cualquier otra índole, origen nacional o social, posición económica, nacimiento **o cualquier otra condición**". Íd. Similar disposición se incluye en el Artículo 1 de la Convención Americana de Derechos Humanos (Convención Americana) y en el Artículo 2 del Pacto Internacional de Derechos Civiles y Políticos (Pacto Internacional). Convención Americana de Derechos Humanos (22 de noviembre de 1969); Pacto Internacional de Derechos

Civiles y Políticos, A.G. Res. 2200 (XXI), N.U. Doc. A/RES/2200 (XXI) (16 de diciembre de 1966). La Declaración Universal también reconoce que "todos son iguales ante la ley y tienen, sin distinción, derecho a igual protección de la ley". Declaración Universal de Derechos del Hombre, supra. Añade que todos tienen igual protección en contra de toda discriminación que violente lo proclamado en esta Declaración Universal y, además, en contra de toda provocación a tal discriminación. Íd. Similar protección de igualdad ante la ley se establece en la Convención Americana y en el Pacto Internacional.

Asimismo, la Declaración Universal y el Pacto Internacional preceptúan que, en materia penal, toda persona tiene derecho, en igualdad de condiciones, a ser oída públicamente y con justicia, por un tribunal independiente e imparcial, para la determinación de sus derechos y obligaciones o para examinar cualquier acusación en su contra. Declaración Universal de Derechos del Hombre, supra; Pacto Internacional de Derechos Civiles y Políticos, supra. En armonía con ello, tanto la Convención Americana como el Pacto Internacional, disponen expresamente que, durante el proceso criminal, toda persona tiene derecho, en plena igualdad, a unas garantías mínimas, que incluyen **estar asistido gratuitamente por un intérprete, si no comprende o no habla el idioma del juzgado o tribunal.**

Convención Americana de Derechos Humanos, supra; Pacto Internacional de Derechos Civiles y Políticos, supra. De la misma forma, exigen que toda persona detenida sea informada de las razones para su detención y notificada, sin demora, de los cargos formulados en su contra, en un idioma que comprenda. Íd. Valga señalar que se ha interpretado que ese derecho emana, a su vez, de los derechos que le asisten a las minorías lingüísticas a tener su propia vida cultural y emplear su propio idioma, según se le reconoce en el Artículo 27 del Pacto Internacional. Véase Pacto Internacional de Derechos Civiles y Políticos, supra; FRANCISCO ALBERTO GÓMEZ SÁNCHEZ TORREALVA, EL ACCESO A UN INTÉRPRETE COMO MANIFESTACIÓN DEL EJERCICIO DEL DERECHO DE DEFENSA: APUNTES SOBRE LA IDENTIDAD CULTURAL Y LOS DERECHOS LINGÜÍSTICOS 9 (2009).

Cónsono con todo lo anterior, en la Unión Europea se ha contemplado que se le provea un intérprete al imputado de delito desde la etapa investigativa. Ello, toda vez que permite que la persona con barreras lingüísticas tenga conocimiento de los hechos que se le imputan y, además, pueda ejercer adecuadamente su derecho a defenderse. GÓMEZ SÁNCHEZ TORREALVA, supra, pág. 12. De igual manera, se ha dispuesto que el acceso a un intérprete constituye una manifestación del ejercicio de ese derecho a defenderse, de forma que el imputado no se exponga a un estado de indefensión en cualquier etapa del proceso penal. Íd., pág. 13.

Por otra parte, resulta importante destacar que conscientes de la difícil situación que enfrentan las personas con barreras producto del origen social, impedimentos físicos o de naturaleza lingüística, y en aras de garantizarles el pleno goce de todos los derechos humanos y libertades fundamentales, se promulgó la Convención sobre los Derechos de las Personas con Discapacidad. _Véase_ Convención sobre los Derechos de las Personas con Discapacidad, United Nations, _Treaty Series_, Vol. 2515, p. 3, 154-188. De conformidad con los principios de igualdad enunciados en los cuerpos internacionales ya citados, en esta Convención se determina que, a los fines de eliminar la discriminación, se adoptarán todas las medidas pertinentes para asegurar que se provean acomodos razonables a estas personas. _Íd._, pág. 161. En ese sentido, en el Artículo 13 de esta Convención se establece específicamente que se garantizará el acceso a la justicia a estas personas, en igualdad de condiciones, mediante ajustes de procedimientos. _Íd._, pág. 165. Ello, para facilitar su desempeño como participantes directos e indirectos **"en todos los procedimientos judiciales, con inclusión de la etapa de investigación y otras etapas preliminares"**. _Íd._ (énfasis suplido). Asimismo, se ordena que para la ejecución efectiva de esos fines se promoverá "la capacitación adecuada de los que trabajan en la

administración de la justicia, incluido el personal policial y penitenciario". Íd. Además, se impone el deber de asegurar que las personas con discapacidad, que sean privadas de su libertad en un proceso criminal, tengan, en igualdad de condiciones, derecho a las garantías que provee el Derecho Internacional en materia de los derechos humanos, y a ser tratadas de conformidad con los objetivos y principios proclamados en esta Convención. Íd., pág. 166.

En atención a lo anterior, en esta Convención se dispone que entre las medidas pertinentes que se tomarán para garantizar los derechos de las personas con discapacidad está reconocer, aceptar, promover y facilitar el uso del lenguaje de señas, así como otros modos, medios y formatos de comunicación que elijan estas personas. Íd., pág. 170. De ese modo, se establece un derecho amplio "al reconocimiento y el apoyo de su identidad cultural y lingüística específica, incluidas la lengua de señas y la cultura de los sordos". Íd., pág. 179.

Examinada la normativa jurídica que rige la controversia de epígrafe, procedo a exponer los argumentos que sustentan mi disenso.

**III**

Como bien reconoce una Mayoría de este Tribunal, "es evidente que los problemas de audición de la señora Nazario Aponte ameritaban que estuviera asistida de un

intérprete durante la celebración de la vista de causa para arresto". Sentencia, pág. 7. Ante esta innegable realidad, resulta sumamente preocupante que esa misma Mayoría establezca que la interrogante a resolver "no es la necesidad de intérprete ni si se le violaron los derechos de la peticionaria en la vista de Regla 6, supra, sino si la moción de desestimación presentada ante el Tribunal de Primera Instancia es prematura". Íd., pág. 8. Ante ello, no hallo razón para tal conclusión, que no sea la falta de sensibilidad ante las circunstancias particulares que caracterizan a las personas que forman parte de la comunidad sorda. Estos ciudadanos y ciudadanas tienen que interactuar, día a día, con diversas barreras que les impiden su participación plena y efectiva en la sociedad, en igualdad de condiciones con los demás ciudadanos y ciudadanas. Ello incluye las barreras que enfrentan en nuestro sistema de justicia.

Tan solo pensemos por un momento la situación de impotencia a la que se expuso a la señora Nazario Aponte durante la celebración de la vista de Regla 6. De repente, se encuentra en la sala de un tribunal, con la figura de autoridad de un juez presidiendo un procedimiento que desconoce; de su lado, observa a la agente investigadora comunicándose con el juez, pero a la que no puede escuchar, sólo observar en posición lateral, sin poder leer el movimiento de sus labios; de

otra parte, también observa al alegado perjudicado testificando en su contra, pero tampoco puede escuchar lo que declara, sólo observar, a penas, el movimiento de sus labios. Todo ello, mientras se encontraba imposibilitada de escuchar o entender de alguna forma lo que allí se decía y ocurría, ni siquiera pudo leer los labios de aquellos que se sentaron a testificar en su contra, sólo observar desde la distancia y en posición lateral el movimiento de sus labios. Es como si la mera presencia de la señora Nazario Aponte creara una ficción que subsana la cruda realidad de que estuvo ajena al proceso por no escuchar ni entender lo que realmente estaba sucediendo. ¿Es ese el escenario al que normalmente están expuestos los imputados de delito presentes en el procedimiento de Regla 6? Claramente no. ¿Queremos perpetuar el discrimen en contra de este sector vulnerable, negándole el acomodo razonable que requieren para poder entender los procesos penales instados en su contra?

Como adelanté, nociones fundamentales de justicia me mueven a contestar en la negativa y a reiterar mi postura de salvaguardar el derecho de esta ciudadana a un debido proceso de ley, mediante el reconocimiento de su derecho a un intérprete debidamente cualificado durante **todo** el procedimiento criminal. Resulta forzoso colocar en igualdad de condiciones a estas personas que, como la peticionaria, no pueden siquiera oír ni

entender cualquier procedimiento judicial en su contra. Se trata de brindar igualdad de acceso a nuestro sistema, que disfruten de las mismas garantías que los demás imputados de delito que sí tienen la oportunidad de oír y entender lo que ocurre en la vista de Regla 6. Recuérdese que allí se determinará si se le arrestará y privará de su libertad o si se le concede una fianza hasta la continuación de los procesos subsiguientes.

Ante ello, lo mínimo que podía hacer una Mayoría de este Tribunal era reconocerle a la señora Nazario Aponte el derecho a tener la asistencia de un intérprete cualificado durante la celebración de la vista de Regla 6. Máxime cuando, como reseñé, en otras jurisdicciones ya se han tomado esa y otras medidas necesarias, en aras de proteger los derechos fundamentales de estas personas con barreras lingüísticas. No sólo eso, han emprendido una gran batalla para sensibilizar a la sociedad y fomentar el respeto de los derechos y la dignidad inherente de estos ciudadanos y ciudadanas. Las medidas y mecanismos adoptados, que, como he discutido, incluyen la asistencia de un intérprete cualificado en **todas** las etapas del procedimiento criminal, han representado pasos de avanzada para la protección de los derechos constitucionales fundamentales de este sector vulnerable.

Según mencioné, en nuestro ordenamiento jurídico se ha reconocido el derecho a un intérprete en etapas tempranas del proceso criminal, lo que representó un esfuerzo noble por asegurarle la protección de las garantías mínimas del debido proceso de ley a ciudadanos y ciudadanas con barreras lingüísticas. No obstante, queda mucho camino por recorrer y muchas barreras por rebasar. Precisamente, el dictamen que hoy emite una Mayoría de este Tribunal constituye una barrera más que se erige en detrimento del reconocimiento de los derechos y libertades fundamentales de los ciudadanos y ciudadanas de la comunidad sorda. Por ello, DISIENTO.

## IV

En consecuencia, revocaría el dictamen emitido por el Tribunal de Apelaciones y ordenaría al Tribunal de Primera Instancia la celebración de una nueva vista de determinación de causa probable para arresto con las debidas garantías procesales.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                 Núm. CC-2016-773

Marangely Nazario Aponte

    Peticionaria

Opinión Disidente emitida por el Juez Asociado señor Colón Pérez.

> *"The legal system has proven to be a huge barrier to deaf people. The judicial system, its administrators and the private bar must become sensitive to the communications needs of deaf people in order to make the legal system accessible."* L.J. Goldberg, *The Law: Form Shield to Sword for Deaf People*, 9 Hum. Rts. 22 (1980).

En San Juan, Puerto Rico, a 17 de agosto de 2017.

Por entender que el ejercicio del derecho constitucional al debido proceso de ley no puede estar a la merced del cumplimiento con un mecanismo procesal, como lo es la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II, disiento del lamentable e insensible proceder de una mayoría de este Tribunal, quienes -- en el contexto de un procedimiento

criminal -- le han negado a una persona audio impedida el derecho a tener la asistencia de un intérprete que le permita comprender -- como lo comprenden los demás seres humanos que acuden a nuestros tribunales -- los procesos que se ventilan en su contra. Veamos.

I.

En el presente caso, los hechos medulares no están en controversia. Como bien se señala en la Sentencia que hoy emite este Tribunal, tras la presentación de una denuncia en contra de la señora Marangely Nazario Aponte por la supuesta comisión de un delito grave[2], se celebró la correspondiente vista de determinación de causa probable para arresto. En la vista, donde declararon dos testigos por parte del Ministerio Público, compareció -- acompañada por su madre -- la señora Nazario Aponte, quien tiene un impedimento auditivo, desconoce del lenguaje de señas y a quien no se le proveyó asistencia de un intérprete de labio lectura. Celebrada la referida vista, se determinó causa probable para arresto en contra de la señora Nazario Aponte por el delito imputado y, entre otras, se señaló la celebración de la vista preliminar para el 29 de diciembre de 2015.

En cumplimiento con lo ordenado, la señora Nazario Aponte acudió al Tribunal de Primera Instancia en la fecha

---

[2] A la señora Marangely Nazario Aponte se le presentó denuncia por infracción al Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica*, 8 LPRA sec. 631.

pautada para la celebración de la vista preliminar y manifestó que contrataría a un abogado, por lo que la referida vista quedó señalada para una fecha posterior. Según se desprende del expediente ante nuestra consideración, así como de la Sentencia emitida por una mayoría de este Tribunal, la jueza que presidía sala hizo constar, entre sus anotaciones, que la señora Nazario Aponte era "*audio impedida*" y que existía la posibilidad de que necesitara un intérprete para comprender los proceso en su contra.

Así las cosas, varios días antes de la celebración de la referida vista preliminar, la señora Nazario Aponte presentó una moción de desestimación de la denuncia. Alegó que era una persona sorda a la cual se le violentó su debido proceso de ley, al no haber sido provista de intérprete en labio lectura ni acomodo razonable, a pesar de que el Tribunal conocía de su condición[3].

Tras la celebración de una vista argumentativa, en la cual las partes tuvieron la oportunidad de exponer sus respectivos argumentos, el Tribunal de Primera Instancia -- a nuestro juicio, correctamente -- declaró con lugar la

---

[3] La Sentencia de este Tribunal alega que "*no existe constancia*" de que el foro primario conociera que la señora Nazario Aponte era sorda. No obstante, de la transcripción de la vista preliminar, donde se argumentó la solicitud de desestimación y, asimismo, se declaró Ha Lugar, se desprende de los argumentos del Ministerio Público y de la defensa que, al celebrarse la vista de determinación de causa para el arresto, se conocía que la señora Nazario Aponte era sorda y que no entendía el lenguaje de señas. *Véase* Apéndice de *Certiorari*, págs. 60-70.

solicitud de desestimación de la denuncia, por violación al debido proceso de ley.

Inconforme, el Ministerio Público acudió al Tribunal de Apelaciones mediante una *Petición de Certiorari*. Allí, expuso que la determinación del foro primario fue una contraria a derecho, por haber acogido una moción de desestimación en una etapa prematura del procedimiento criminal. El Ministerio Público arguyó que la determinación de causa probable para acusar, tras la celebración de una vista preliminar, subsanaba cualquier error acaecido durante la vista para determinar causa probable para arresto.

Por su parte, la señora Nazario Aponte presentó una *Oposición a Petición de Certiorari*, en la cual arguyó que la vista de causa probable para arresto celebrada en su contra se realizó en violación a su debido proceso de ley. Ello, por no haber sido asistida por un intérprete de labio lectura ni habérsele provisto un acomodo razonable.

Evaluados los planteamientos de las partes, el foro apelativo intermedio dictó Sentencia. Al así hacerlo, acogió la teoría esbozada por el Ministerio Público y, en su consecuencia, revocó la determinación del foro primario. Concluyó que la moción de desestimación debía presentarse luego de concluida la vista preliminar y no antes[4].

---

[4] Por su parte, la Jueza Nieves Figueroa emitió una Opinión Disidente, en la cual expuso que la actuación de la mayoría del foro apelativo intermedio tuvo el efecto de privar a la señora Nazario Aponte de su derecho constitucional al debido proceso de ley. Por parecernos de

Insatisfecha con ese proceder, la señora Nazario Aponte acude ante nos.

Expedido el auto de *certiorari*, y luego de que ambas partes presentaran sus respectivos escritos, la mayoría de este Tribunal emitió la Sentencia de la cual disentimos en el día de hoy. En la misma, de forma errada, se delineó la controversia ante nuestra consideración como una de índole procesal, planteando que lo que estamos llamados a resolver es si la moción de desestimación presentada por la señora Nazario Aponte era una prematura, por haberse presentado antes de la celebración de la vista preliminar. De este modo, se descartó el planteamiento que realmente está en controversia en el presente caso, a saber: la violación del debido proceso de ley de una persona audio impedida, por no contar con intérprete en una de las etapas de un proceso criminal instado en su contra.

Por no estar de acuerdo con el curso de acción seguido por una mayoría de este Tribunal, procedemos a esbozar lo que, a nuestro juicio, era el acercamiento correcto que debió haberse realizado para atender las controversias traídas ante nuestra consideración. Veamos.

---

vital importancia al asunto que hoy atendemos, transcribimos las siguientes expresiones:

> Los derechos existen en la medida en que el ciudadano tenga un vehículo para reclamarlos. En la medida [en] que el Panel insiste en que la señora Nazario Aponte no tiene mecanismo alguno para quejarse de la violación al derecho al debido proceso de ley que ha sufrido, le niega *de facto* el mismo. Apéndice de *Certiorari*, a la pág. 124.

II.

Como bien es sabido, tanto la Constitución del Estado Libre Asociado de Puerto Rico, como la Constitución de los Estados Unidos, consagran una de las garantías fundamentales en todo ordenamiento jurídico, a saber: el debido proceso de ley. Al respecto, nuestra Constitución, en su Carta de Derechos, reconoce el derecho a la vida y la libertad como un *"derecho fundamental"* y, asimismo, establece que *"[n]inguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes"*. Art. II, Sec. 7, Const. E.L.A., LPRA, Tomo I, ed. 2016, pág. 301.

De forma muy similar, la Constitución de los Estados Unidos, en su Quinta Enmienda, dispone que *"[n]inguna persona […] será privad[a] de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley…"*. Emda. V, Const. EE. UU., LPRA, Tomo I, ed. 2016, págs. 190-191. Además, la Enmienda Catorce de la Constitución federal establece que *"… ningún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes"*. Emda. XIV, Const. EE. UU., LPRA, Tomo I, ed. 2016, pág. 208.

En atención a lo anterior, esta Curia ha denominado la cláusula del debido proceso de ley como la *"disposición matriz de la garantía de los derechos individuales ante la*

*intervención injustificada del Estado con el ciudadano".* *Pueblo v. Arzuaga*, 160 DPR 520, 535 (2003); *Pueblo v. Vega Rosario*, 148 DPR 980, 989 (1999), citando a O.E. Resumil, *Derecho Procesal Penal*, Oxford, Ed. Equity Pub. Co., 1990, T. 1, pág. 28. Además, hemos expresado que, en su vertiente procesal, la referida cláusula constituye *"la garantía fundamental que tiene un ciudadano ante una investigación y proceso criminal".* *Pueblo v. Arzuaga*, *supra*, citando a E.L. Chiesa Aponte, *Derecho procesal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991, Vol. II, pág. 23. Ello, puesto que *"[s]e trata de los imperativos de la justicia fundamental – fundamental fairness – a los que tiene derecho un ciudadano".* *Íd.*, a la pág. 24. En ese sentido, hemos señalado que:

> La protección [consagrada por el debido proceso de ley] es un arma ofensiva y defensiva; impide al Estado ciertos métodos de investigación y procesamiento, y también proporciona al acusado armas ofensivas, como el derecho a cierto descubrimiento de prueba y a presentar cierta evidencia. *Íd.*, a la pág. 25. (Citas internas omitidas)[5].

## III.

Cónsono con lo anterior, en aras de hacer valer la garantía del debido proceso de ley, en nuestro ordenamiento jurídico queda proscrito el arresto de una persona sin

---

[5] Siendo ello así, nos resulta imposible razonar cómo una persona que no entiende los procedimientos criminales instados en su contra -- por ser audio impedida y no proveérsele la asistencia de un intérprete -- puede gozar a plenitud de las referidas protecciones. Y es que, una persona en tales circunstancias, indiscutiblemente se encuentra imposibilitada de ayudar a su representación legal en la defensa de su caso. Cualquier contención en contrario resulta errada y altamente cuestionable.

previa orden judicial fundada en una determinación de causa probable. Sec. 10, Art. 10, Const. E.L.A., Tomo I, LPRA, ed. 2016, pág. 336. Es por ello que cualquier acción penal comienza con la determinación de causa probable para arrestar, al amparo de la Regla 6 de las de Procedimiento Criminal, 34 LPRA Ap. II. *Véanse Pueblo v. Irizarry,* 160 DPR 544, 555 (2003); *Pueblo v. Miró González*, 133 DPR 813, 819 (1993), citando con aprobación a D. Nevárez-Muñiz, *Sumario de derecho procesal puertorriqueño*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 39.

En este sentido, la determinación de causa para arresto por un magistrado no solo da inicio a la acción penal, sino que también faculta al Estado a presentar una denuncia o acusación contra la persona imputada. Regla 6 de las de Procedimiento Criminal, *supra*; *Pueblo v. Miró González*, *supra*, a la pág. 820. Es, pues, a raíz de este momento en el que la persona se encuentra "*acusada*" y, por lo tanto, sujeta a contestar una acusación o denuncia en su contra, así como "*propensa a ser convicta*". *Íd.,* citando a *United States v. Marion,* 404 US 307, 313 (1971) *Pueblo v. Carmen Centrale, Inc.,* 46 DPR 494, 498 (1934).

Por otra parte, por tratarse la determinación de causa probable para arresto de una criatura con génesis constitucional, se ha planteado que en la misma "*es imperativo garantizar el debido procedimiento de ley*". J. Fontanet Maldonado, *El proceso penal de Puerto Rico: Etapa Investigativa e Inicial del Proceso*, San Juan, Ed.

InterJuris, 2008, pág. 214. Y es que la vista celebrada a tales efectos tiene como finalidad interponer "*la figura imparcial del juez entre los funcionarios públicos y la ciudadanía, brindándose una garantía mayor sobre la legitimidad y razonabilidad de la intromisión por parte del Estado*". *Pueblo v. Calderón Díaz*, 156 DPR 549, 556 (2002); *Pueblo v. Colón Bernier*, 148 DPR 135, 141 (1999); *ELA v. Coca Cola Bott. Co.*, 115 DPR 197, 207 (1984). *Véase* además Fontanet Maldonado, *op. cit.*

Es por ello que, en la celebración de vista para determinar causa probable para el arresto, a pesar de que, como norma general, la persona imputada no está presente, de estarlo, tendrá derecho a "*estar asistido de abogado, a contrainterrogar a los testigos en su contra y a ofrecer prueba en su favor*". Regla 6 de las de Procedimiento Criminal, *supra*. Estos derechos, no obstante, no operan de forma absoluta, sino que quedan limitados a la discreción del tribunal, dado a que la vista de determinación de causa probable para arresto puede celebrase en ausencia del imputado. *Pueblo v. North Caribbean*, 162 DPR 374, 380-381 (2004); *Pueblo v. Irizarry*, 160 DPR en las págs. 558-559.

Ahora bien, es menester señalar que, en aquellos casos de delitos grave, una vez se determina causa probable para arresto contra una persona, se pauta la celebración de una vista preliminar de conformidad con la Regla 23 de las de Procedimiento Criminal, 34 LPRA Ap. II. El objetivo de esta vista es "*determinar si existe causa probable para procesar*

*a un imputado por el delito grave por el cual se determinó*
*causa probable para arresto"*. *Pueblo v. García Saldaña*, 151
DPR 783, 788 (2000); *Pueblo v. Quiñones Rivera*, 133 DPR
332, 337 (1993). En otras palabras, su fin *"no es*
*establecer la culpabilidad o inocencia del acusado, sino*
*averiguar, mediante una vista adversativa, si el Estado*
*tiene suficiente prueba para continuar con el proceso*
*judicial"*. *Pueblo v. Rivera Rodríguez*, 138 DPR 138, 142-143
(1995). *Véanse* además *El Vocero de P.R. v. E.L.A.*, 131 DPR
356 (1992); *Pueblo v. Rodríguez Aponte*, 116 DPR 653, 654
(1985).

Como se puede apreciar, ambas vistas tienen un fin y
propósito distinto. La determinación de causa probable para
arresto es insuficiente para someter a una persona a todos
los rigores de un procedimiento criminal ante la imputación
de la comisión de un delito grave, puesto que haría falta
la determinación de causa probable para arresto conforme a
la Regla 23 de las de Procedimiento Criminal, *supra*. Al
respecto, se ha dicho que ello es así

> […] por razón de que el denunciante puede sin
> razón válida alguna imputar un delito, y en
> virtud de la naturaleza no adversativa de la
> determinación de causa probable para el arresto
> o citación— que puede hacerse en ausencia del
> imputado— se someta "arbitrariamente" a un
> ciudadano a un juicio por delito grave. Chiesa
> Aponte, *Op. cit.*, pág. 64.

Por otro lado, nuestras Reglas de Procedimiento
Criminal reconocen a favor de toda persona acusada una
serie de escenarios en los que se puede presentar una

solicitud de desestimación de la acusación o la denuncia. Al interpretar estos escenarios -- y por tratarse de la doctrina que, en el día de hoy interpreta y aplica incorrectamente una mayoría de este Tribunal, -- debemos acudir a la norma establecida en *Pueblo v. Jiménez Cruz,* 145 DPR 803 (1998). En el mencionado caso, esta Curia resolvió que el momento oportuno para presentar una moción de desestimación en casos de delitos graves, es luego de que se presente una acusación. Específicamente, el Tribunal distinguió la determinación de causa probable para arresto, conforme a la Regla 6 de las de Procedimiento Criminal, *supra,* de una determinación de causa probable para acusar, al amparo de la Regla 23 de las de Procedimiento Criminal, *supra.* En este sentido, se estableció lo siguiente:

> Tanto la vista que tiene lugar al amparo de la citada Regla 6, como aquella que se celebra al amparo de la Regla 23 de Procedimiento Criminal, *supra,* exhiben características comunes. Ambas reglamentan los procedimientos preliminares al juicio y tienen por finalidad una determinación de causa probable. En la vista para obtener la *orden de arresto,* la cantidad de prueba necesaria es la suficiente para creer que se ha cometido un delito y la persona denunciada probablemente lo cometió. *Pueblo v. Jiménez Cruz, supra,* a las págs. 812-813.

Por último, y en lo pertinente al caso que nos ocupa, este Tribunal concluyó que "*la determinación positiva de causa probable para acusar, luego de celebrada la vista preliminar, subsana cualquier error que hubiese habido* **en la determinación de causa probable para arrestar**". (Énfasis suplido). *Íd.,* a la pág. 815. No obstante, es menester

señalar que esa "*subsanación*" a la que se hizo referencia, es exclusivamente "**en cuanto al aspecto central de si se puede o no continuar el proceso criminal contra el imputado**". (Énfasis suplido). *Íd.*, citando a Chiesa Aponte, op. cit., pág. 48. Este último dato es obviado, de forma acomodaticia, en la Sentencia que hoy emite este Tribunal.

En fin, de lo anterior ha quedado claramente demostrado que en nuestro ordenamiento jurídico se reconocen ciertas garantías durante la determinación de causa probable para arresto, que se activan solamente si la persona imputada comparece a la celebración de la vista a tales efectos. *Véase Pueblo v. Rivera Rivera*, 145 DPR 366, 375 (1998). A su vez, las mismas quedan sujetas a que el Estado decida examinar las declaraciones de algún testigo que siente a declarar en la vista. *Pueblo v. Irizarry*, *supra*, a la pág. 564.

Ahora bien, en el caso de personas audio impedidas, personas con severas barreras al momento de comunicarse, --como sucede en el presente caso --, esas salvaguardas cobran mayor relevancia para garantizarles un proceso imparcial y justo. Nos explicamos.

IV.

En Puerto Rico, la población de personas con algún tipo de necesidad especial es una altamente significativa. En relación al caso que nos ocupa, se estima que existen más de 340 mil personas audio impedidas en nuestro País.

L.F. Estrella Martínez, *Acceso a la Justicia: Derecho Humano Fundamental*, San Juan, P.R. Ed. Situm, Inc., pág. 392. Por ello, se han realizado varios esfuerzos para atender e integrar a esta comunidad en nuestra sociedad. *Íd.*

Una persona audio impedida no se enfrenta únicamente a problemas de comunicación, sino que, además de dicha barrera comunicativa, sus limitaciones plantean necesidades culturales y de comportamiento. *Véase* Jamie McAlister, *Deaf and Hard-of-Hearing Criminal Defendants: How You Gonna Get Justice If You Can't Talk To The Judge*, 26 Ariz. St. L.J. 163, 165 (1994). En cuanto a una persona audio impedida y la interacción de esta con el sistema judicial, las barreras lingüísticas a las que se enfrenta una persona sorda resultan en

> […] a markedly impaired capacity for understanding basic legal terminology, some social ethics, and conventional mores. This deprived social, cognitive, and linguistic state, not deafness *per se*, typically creates unique difficulties in the disposition of homicide and of other felony cases in which deaf persons are suspects or defendants. McCay Vernon, Annie G. Steinberg & Louise A. Montaya, *Deaf Murderers: Clinical and Forensic Issues*, 17 Behav. Sci. & Law 495, 496 (1999).

Así las cosas, y en aras de erradicar el tipo de barrearas ante señaladas, como política pública del Estado Libre Asociado de Puerto Rico se ha reconocido la responsabilidad del Gobierno de proteger, promover y defender la igualdad de todos los seres humanos ante la ley, incluyendo aquellos con impedimentos auditivos. A

tales fines, la Ley Núm. 138-1996, según enmendada, mejor conocida como la *Ley para Servicios Agenciales para Personas con Impedimentos*, exige que las agencias administrativas provean un intérprete para asistir a todas aquellas personas con impedimentos auditivos que no puedan comunicarse de forma verbal. 8 LPRA sec. 811(a).

Asimismo, la Rama Judicial adoptó las *Normas y Procedimientos para la Selección, Solicitud, y Compensación de Intérpretes en la Rama Judicial*, mediante la Circular Núm. 10 de 20 de octubre de 2007 de la Oficina de Administración de los Tribunales. Específicamente, la Regla VIII de dicho cuerpo normativo dispuso, en su sección A, que será deber de la Rama Judicial proveer servicios de intérpretes en un listado de procedimientos, dentro de los que se encuentran los siguientes:

> a. Casos criminales, **a partir de vista de causa para acusar (Regla 6):**
>
> > 1) Cuando sea para imputados(as) o acusados[(as)], independientemente de su condición económica, en el tribunal correspondiente.
> >
> > 2) […]
> >
> > […]
> >
> > d. En cualquier otro asunto en que el Juez o Jueza entienda que es necesario ofrecer los servicios del intérprete en el Tribunal. (Énfasis suplido).

**Por otro lado, en lo que a la Rama Judicial también se refiere, precisa señalar que, en el contexto de los procedimientos criminales y al interpretar la cláusula del**

**debido proceso de ley, este Tribunal ha establecido que una persona audio impedida acusada de la comisión de un delito debe tener un intérprete durante todo el procedimiento criminal al que se enfrenta**. (Énfasis nuestro). *Pueblo v. Moreno González*, 115 DPR 298, 304 (1984). Según interpretáramos más tarde, la conclusión alcanzada en *Moreno González* "*fue consecuencia lógica de la noción fundamental, inmersa en la cláusula constitucional que garantiza un debido proceso de ley, de que una persona no debe estar sujeta a un proceso judicial injusto*". *Pueblo v. Branch*, 154 DPR 575, 580 (2001).

Y es que, tal y como hemos expresado anteriormente, el derecho de una persona imputada a confrontarse con el testimonio de cargo, "*realmente significa el derecho del acusado a oír a los testigos que declaran en su contra e incluye el derecho a poder contrainterrogarlos a través de su abogado*". *Íd. Véase* además *Pueblo v. Moreno González, supra*. Es decir, el derecho a comprender, en toda su extensión, los procedimientos que se ventilan en su contra.

Cónsono con lo anterior, hemos señalado que en aquellas circunstancias en las que la persona acusada tenga limitaciones auditivas que le impidan comunicarse efectivamente de forma verbal, la ausencia de un intérprete infringe el derecho al debido proceso de ley de ésta; ello, por no entender el testimonio presentado en su contra. Al respecto, en *Pueblo v. Branch, supra*, a la pág. 581, sostuvimos que

para un imputado que no entiende las incidencias de un procedimiento judicial, la asistencia de un intérprete durante todo el proceso adquiere una importancia tridimensional: primero, hace posible el interrogatorio de los testigos; segundo, facilita a los demandados o acusados poder entender la conversación entre abogados, testigos y el juez; y tercero, hace viable la comunicación entre abogado y cliente. (Citas internas omitidas).

Si bien es cierto que al realizar los pronunciamientos antes esbozados, los hechos ante nuestra consideración eran distintos a los presentes en los casos antes citados -- ello, puesto que en *Moreno González* evaluamos la violación al debido proceso de ley en la etapa de juicio en su fondo y, en *Branch*, en la etapa de vista preliminar, -- ha quedado meridianamente claro que el imperativo constitucional al debido proceso de ley **no es exclusivo del juicio.**

**Así pues, de conformidad con la normativa antes expuesta, somos del criterio de que la garantía a un debido proceso de ley cobra vida en cualquier etapa del proceso criminal en la que una persona se encuentre presente. Si bien existen instancias en las que la garantía cobra vida, independientemente de la presencia o ausencia de la persona, el debido proceso de ley en la etapa de vista para determinar causa para arresto, opera en toda su extensión; máxime, cuando se trata de un individuo con impedimentos auditivos.**

V.

Como señalamos anteriormente, en el presente caso la señora Nazario Aponte -- persona con limitaciones auditivas y que, como agravante, desconoce el lenguaje de señas y solo sabe "*leer los labios*" -- fue sometida a una vista para determinar causa probable para arresto, **sin la asistencia de un intérprete**. Aun así -- y en un acto, a lo sumo, insensible, -- se le determinó causa probable para arresto en dicha vista, donde testificaron en su contra dos personas y, como consecuencia de lo anterior, fue citada para la celebración de una vista preliminar en su contra. Ello cuando, a todas luces, la señora Nazario Aponte no pudo confrontar la prueba presentada en su contra y, lo que es peor, tampoco pudo entender la prueba presentada por el Ministerio Público en una de las etapas de un procedimiento criminal instado en su contra.

En vista de lo anterior, la defensa de la señora Nazario Aponte compareció ante el foro primario y solicitó la desestimación de la denuncia en su contra, tras alegar que a ésta se le violentó el debido proceso de ley en la etapa de vista de causa probable para arresto, al no proveérsele la asistencia de un intérprete. El Tribunal de Primera Instancia, a nuestro juicio correctamente, desestimó la demanda, por violación al debido proceso de ley.

No obstante, el foro apelativo intermedio revocó el dictamen del foro primario. Dicho tribunal fundamentó su decisión en *Pueblo v. Jiménez Cruz*, *supra*. Al interpretar

el referido caso, el Tribunal de Apelaciones expresó que cualquier defecto en la determinación de causa probable podría ser subsanado en la vista preliminar. Asimismo, intimó que "*cualquier defecto procesal cometido en la etapa de causa probable para arresto podr[ía] ser subsanado en la vista preliminar*"[6]. Innegablemente, el Tribunal de Apelaciones erró.

Nótese que, contrario a lo acaecido en *Pueblo v. Jiménez Cruz*, *supra*, donde se alegó que no se había determinado causa probable conforme a derecho, ya que el magistrado que presidió la vista de determinación de causa para arresto se negó a recibir cierta prueba por parte de la defensa, en el presente caso el error levantado por la señora Nazario Aponte es uno de envergadura constitucional. Es decir, **el presente caso no versa sobre un error procesal o alguna violación a algún precepto legal -- el cual, sin duda, puede quedar subsanado en una vista preliminar, -- sino que, por el contrario, la controversia que nos ocupa trastoca las protecciones mínimas que nuestro ordenamiento jurídico les confiere a las personas que se enfrentan a un procedimiento criminal.**

La pretensión del foro apelativo intermedio, así como de una mayoría de este Tribunal, a los efectos de que este asunto versa sobre una revisión de la determinación de causa probable para arresto por un delito grave y que, por

---

[6] *Véase Sentencia del Tribunal de Apelaciones*, Apéndice de *Certiorari*, pág. 112.

lo tanto, la misma no puede ser revisada hasta luego de celebrada la vista preliminar, lacera los esquemas básicos de nuestro ordenamiento. A diferencia de lo intimado en la Sentencia que hoy emite este Foro, la controversia que tenemos ante nuestra consideración, y que debimos haber atendido, se circunscribe a determinar si el debido proceso de ley de una persona audio impedida, que desconoce el lenguaje de señas, fue violentado al no proveérsele la asistencia de un intérprete en aquella etapa que da inicio a un proceso criminal en su contra. En este caso, no albergamos duda de que ello fue así.

**Y es que el quebrantamiento a un derecho constitucional no puede quedar supeditado a una supuesta subsanación futura**; subsanación que, como vimos, no se da en cuanto a la violación de alguna garantía constitucional. Por el contrario, se circunscribe a corregir, de ser ello necesario, la determinación de comenzar un proceso criminal en contra de la persona imputada de delito.

En el presente caso, no se cuestiona ni se impugna de forma alguna la determinación de causa probable para arresto en sus méritos, en relación al delito imputado a la señora Nazario Aponte -- lo cual, advertimos, sí podría quedar subsanado en una vista preliminar, -- sino que se cuestiona un asunto de mayor trascendencia: la trasgresión del debido proceso de ley de la señora Nazario Aponte, una mujer audio impedida que no pudo entender los procedimientos criminales conducidos en su contra, por no

contar con la asistencia de un intérprete. Esta actuación, bajo ninguna circunstancia, puede quedar corregida en un evento futuro como lo es la celebración de una vista preliminar.

No olvidemos que la garantía de un intérprete en los procesos criminales debe entenderse como un componente más de un verdadero **acceso a la justicia**.

Siendo ello así, nuestra conciencia nos imposibilita avalar con nuestro voto el curso de acción que toma una mayoría de este Tribunal. Tal y como señaló el compañero Juez Asociado señor Estrella Martínez hace unos días, en un asunto en extremo similar al que nos ocupa, no podemos permitir

> […] que continúen perpetuándose injusticias de esta índole, en las cuales se les priva a los ciudadanos de sus derechos constitucionales por diversas barreras producto del origen social, impedimentos físicos o de naturaleza lingüística, como el caso que nos ocupa. *Pueblo v. Lory Frey*, 2017 TSPR 97, 198 DPR ___ (2017) (Opinión Disidente).

Por todo lo anterior, disentimos.


                                        Ángel Colón Pérez
                                        Juez Asociado